571 A.2d 1104

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant,**

v.

**Stanley TOMCZAK, Appellee.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 9, 1989.

Decided March 14, 1990.

Donald H. Poorman, Asst. Counsel, Harold H. Cramer, Asst. Chief Counsel and John L. Heaton, Chief Counsel, for appellant.

David M. Dougherty, Jacoby & Meyers, Philadelphia, for appellee.

Before DOYLE and McGINLEY, JJ., and BARBIERI, Senior Judge.

DOYLE, Judge.

The Pennsylvania Department of Transportation (Department) appeals an order of the Court of Common Pleas of Philadelphia County vacating the suspension of Stanley Tomczak's driver's license by the Department pursuant to Section 1547(b) of the Vehicle Code (Code), 75 Pa.C.S. § 1547(b).[1] We reverse.

At the hearing de novo before the common pleas court, State Trooper Joseph Carcaci testified that he was directing traffic at an intersection at the scene of an accident when Tomczak first stopped his truck at a stop sign at the intersection but then proceeded through it striking Carcaci slightly in the chest with the truck. After being struck, Carcaci pounded his fist on the hood of the truck and yelled for Tomczak to stop the vehicle.[2] When Tomczak stopped, Carcaci detected an odor of alcohol on his breath and person. He then asked Tomczak to perform field sobriety tests, which Tomczak was unable to perform satisfactorily. Carcaci arrested Tomczak for driving under the influence of alcohol, read him his Miranda[3] warnings and informed him that his license would be suspended for one year for failure

1. Section 1547(b) of the Code provides for the suspension of a driver's license for a period of one year upon the refusal to submit to chemical testing to determine blood-alcohol content.

2. Trooper Carcaci testified: "He just continued to travel and I was backstepping. He was pushing me at the same time, and I was afraid I was going to get run over. I was pounding on the hood, 'Stop, stop.' But he didn't stop."

3. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

to submit to a breathalyzer test. Subsequent to Tomczak's transport to the police station, Carcaci again read him his *Miranda* warnings and license suspension warning. Trooper Anthony Gant, a certified intoxilizer operator also advised Tomczak of the consequences of a refusal. Carcaci testified that Tomczak acknowledged and understood the rights that were read to him and he still refused to take the test. Tomczak testified that *due to his nervousness over the ordeal of being arrested, he did not fully understand that his refusal to submit to a blood test would result in a loss of his driver's privileges.* He testified that it was only after his initial refusal that he realized that his license would be suspended for one year. It was at that point of realization that he then requested to take the test. Carcaci and Gant, on the other hand testified at the hearing that Tomczak never requested to take the test and thus recorded a refusal. (N.T. at 8, 15). The Department informed Tomczak that his license was suspended for failure to submit to a breathalyzer test.

After a de novo hearing, the trial court found that Tomczak was unaware of what he needed to do to avoid a license suspension and that within moments after his initial refusal, he requested to have the breathalyzer administered. The court further found that he should have been given an opportunity to take the breathalyzer test and accordingly revoked the suspension of his driver's license. The Department now brings its appeal before us.[4]

To sustain a license suspension under Section 1547(b)(1) of the Code, the Department must prove that the licensee (1) was arrested for driving under the influence of alcohol; (2) was asked to submit to a chemical test; (3) refused to do so; and (4) was specifically warned that a refusal would result in a license suspension. *Larkin v.*

---

4. Our scope of review where the lower court hears the matter de novo is limited to a determination of whether or not the trial court based its findings on substantial evidence or committed an error of law. *Woods v. Department of Transportation, Bureau of Traffic Safety,* 116 Pa.Commonwealth Ct. 294, 541 A.2d 846 (1988).

*Commonwealth,* 109 Pa.Commonwealth Ct. 611, 531 A.2d 844 (1987).

On appeal, the Department first contends that it met its burden of proof in establishing that Tomczak refused to submit to a breathalyzer test.

The Department presented testimony of the arresting officer, Carcaci, that he detected an odor of alcohol on Tomczak's breath (N.T. at 6) and that Tomczak was unable to perform field sobriety tests satisfactorily (N.T. at 6). Carcaci testified that he thus arrested Tomczak (N.T. at 7). Both Carcaci and Gant testified that they each requested Tomczak to submit to a breathalyzer test and that Tomczak refused. Carcaci and Gant also testified that they each read to Tomczak the consequences of refusing to submit to a breathalyzer test under Section 1547 of the Code, including the statement that refusal to submit to testing would result in a suspension of his license for a period of one year. (N.T. at 7, 14–15).

According to the above recitation of the evidence, therefore, the Department did indeed sustain its burden under Section 1547(b)(1) of the Code. Once the Department sustained its burden with regard to the above-mentioned elements, the burden shifted to Tomczak to prove by competent evidence that he was unable to make a knowing and conscious refusal. *Ford v. Department of Transportation,* 45 Pa.Commonwealth Ct. 268, 406 A.2d 240 (1979).

Tomczak's counsel *argued* before the trial court that Tomczak's refusal was due to his confusion between the *Miranda* warnings and the law with regard to a license suspension for failure to submit to a breathalyzer test. Our Supreme Court recently decided *Department of Transportation, Bureau of Traffic Safety v. O'Connell,* 521 Pa. 242, 555 A.2d 873 (1989), a case in which the trial court found that immediately after the licensee had been given his *Miranda* warnings, including the right to speak to a lawyer before answering any questions, he was then asked

by the police to take a breathalyzer test, and because of that sequence of events, was unfairly confused.

At the hearing before the trial court, the arrestee in *O'Connell* testified that he refused to take the breathalyzer test because he was not permitted to contact his attorney. The trial court accepted the licensee's testimony as more credible than the police officers' version of the facts and found that the licensee refused to take the breathalyzer test because he had not been permitted to contact his attorney before the police insisted he take the test. In *O'Connell*, the police officers never testified that they advised the licensee that he had no right to speak to his attorney before he took the breathalyzer test. The Supreme Court thus stated:

> Accordingly, where an arrestee requests to speak to or call an attorney, or anyone else, when requested to take a breathalyzer test, we insist that in addition to telling an arrestee that his license will be suspended for one year if he refuses to take a breathalyzer test, the police instruct the arrestee that such rights are inapplicable to the breathalyzer test and that the arrestee does not have the right to consult with an attorney or anyone else prior to taking the test.

*Id.*, 521 Pa. at 252, 555 at A.2d at 878.

The facts in the case now before us are materially different from the facts in *O'Connell* in two very important aspects. First, the licensee here, Tomczak, never requested to speak to an attorney nor did he tell the troopers that he was refusing to take the breathalyzer test because he first wanted to speak to his attorney. Second, he never testified that he was confused because he thought that his *Miranda* rights applied to taking the breathalyzer test. The *only* excuse the licensee offered was that even though he was advised of the consequences of his refusal to take the test it was not until after he refused to take it that he fully realized what would happen. He then subsequently requested to take the test, which request the troopers refused. The trial court made this an explicit finding by

stating: "Appellant testified that he failed to comprehend the ramifications of a refusal to submit to the breathalyzer examination due to his extreme nervousness during the entire ordeal." The court then commented:

> We find that Appellant was not aware of what he needed to do to avoid a suspension of his driver's license until after his initial refusal. Appellant's request to have the test administered came moments after his initial refusal and occurred during the course of the same conversation. Under these particular circumstances, Appellant should have been given an opportunity to take the breathalyzer.

The trial court thus based its decision to reverse the revocation of Tomczak's license on the licensee's inability to understand what he needed to do to avoid a driver's license suspension. This lack of awareness is not the confusion to which the Supreme Court in *O'Connell* refers. The confusion in *O'Connell* is that which results when the arrestee is given his or her *Miranda* warnings and is then asked to submit to a breath test. The Supreme Court in *O'Connell* explains this state of confusion:

> The problem in this case, and many similar cases that have arisen, is that these requests to take breathalyzer tests take place as part of the investigation conducted by police in regards to a drunk driving charge which is criminal in nature. The police proceeded with the *Miranda* warnings and at some point (usually when the driver asks to see his lawyer) stop questioning and abruptly change 'hats' and ask the driver to submit to the breathalyzer test. If the arrestee hesitates and attempts to exercise his *Miranda* right by asking for a lawyer or asking to make a phone call, a refusal is recorded.

> This state of affairs is unacceptable because it is fraught with pitfalls for the arrestee who is not trained to recognize the difference between a civil or criminal investigation and becomes a source of accusation of manipu-

lation by the police over confused individuals who are suspected of having dulled senses.

*Id.*, 521 Pa. at 251–52, 555 A.2d at 877.

Tomczak's testimony reveals that he was not confused as to whether his *Miranda* rights applied to taking the breathalyzer test, as was the licensee in *O'Connell*. Rather, Tomczak acknowledged and understood both the *Miranda* warnings and the consequences of refusal (N.T. at 7, 11–12) and he refused anyway. His refusal does not fit within the *O'Connell* type refusal and we refuse to extend *O'Connell* to every situation where the licensee, even legitimately, says that he is confused.

Tomczak's counsel argued before the trial court that his confusion, coupled with his age and his heart trouble, was sufficient to show that he was unable to make a knowing and conscious refusal. The law is, however, that absent an obvious medical infirmity a motorist must prove his inability to make a knowing and conscious refusal by competent medical evidence. *Larkin*. Tomczak produced no medical evidence to prove that he had a medical problem with his heart. The only evidence with respect to his heart is that Carcaci called an ambulance when Tomczak complained of having pain (N.T. at 13). This is not competent medical testimony proving an existing cardiac problem.

Our decision to reinstate Tomczak's license suspension is not at odds with *Commonwealth v. McFadden*, 522 Pa. 100, 559 A.2d 924 (1989), in which the Supreme Court concluded that a licensee did not make a knowing and conscious refusal to submit to a breathalyzer test when he was informed of his *Miranda* rights, was asked to submit to a breathalyzer test and refused. The licensee in *McFadden* asked to make a telephone call after his refusal. The police permitted him to make a call, but recorded a refusal. The Supreme Court held that since the police failed to inform the licensee that his *Miranda* rights did not apply to taking a breathalyzer, the licensee did not make a knowing and conscious refusal. Once the licensee refused to take the test and then asked to make a telephone call, it was the

affirmative duty under *O'Connell* to inform the licensee that his *Miranda* rights did not apply and that he did not have a right to speak to an attorney or anyone else before taking a breathalyzer test. That case is distinguishable from the case *sub judice* in that Tomczak never testified that he asked to speak to an attorney or anyone else after refusing to submit to a breathalyzer. He never testified to saying anything that would signal to the police that he thought his *Miranda* rights applied to taking the breathalyzer test. On the contrary, Tomczak acknowledged he understood the rights that were read to him. Thus, *McFadden* is of no import here.

■ Tomczak's counsel further argued before the trial court that his request to take the breathalyzer test moments after his initial refusal vitiated his refusal. We have held that a refusal to submit to a breathalyzer test is not vitiated by a subsequent assent to take the test. *Cunningham v. Department of Transportation*, 105 Pa.Commonwealth Ct. 501, 525 A.2d 9 (1987). In *Cunningham*, the licensee admitted to refusing to take the test after she was informed of the consequences and changed her mind five minutes later. Similarly, Tomczak admitted to refusing a breath test after being informed of the consequences, and then to changing his mind. The trial court thus erred in vacating the suspension of Tomczak's license.

Having determined that the Department sustained its burden under Section 1547(b)(1) of the Code, that Tomczak failed to sustain his burden of showing that he was unable to make a knowing and conscious refusal to take a breathalyzer test, and that the trial court erred in vacating the suspension, we reverse.

### ORDER

NOW, March 14, 1990, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter is hereby reversed.