**Kosar v. PennDOT**

*Philip L. Zulli, assistant counsel-in-charge,* for the Commonwealth.

*David C. Wertime,* for petitioner.

KAYE, *J.,* September 14, 1990 — In this proceeding, Franklin J. Kosar challenges the action of the Pennsylvania Department of Transportations's action in suspending his operating privileges for one year for violation of 75 Pa.C.S. §1547, i.e., for failing to submit to a test to determine the alcohol content of his blood. In his petition, Mr. Kosar alleges, in the alternative, that: (1) he was not driving, operating or in actual physical control of the movement of a motor vehicle; and (2) he was not advised that a failure to comply with the proffered test would result in a suspension of his driver's license for one year.

A hearing thereon was held on August 16, 1990, the parties have submitted memoranda of law in support of their respective positions, and the matter is before the court for resolution.

On May 5, 1990, at about 11:30 p.m., Officer Stephen T. Bourn of the Borough of Greencastle Police Department was on patrol on Carl Street in the borough where he observed a white vehicle parked along the street, extending about one foot beyond the line of other vehicles parked along the street. After close examination, he determined that a white male, whom he identified as petitioner, was asleep behind the steering wheel, and the keys were in the vehicle's ignition, although the engine was not running and the transmission was not in gear. The officer knocked on the auto window several times, and roused petitioner. After detecting the odor of alcoholic beverage about petitioner, he ordered petitioner out of the car.

Petitioner appeared to have blood shot eyes, and had difficulty in walking. After petitioner failed several field sobriety tests, the officer placed him under arrest for driving under the influence, 75 Pa.C.S. §3731. The officer explained the provisions of the implied consent law to petitioner, including the provision that if he refused to take the proffered test, his license would be suspended for one year. Petitioner told the officer that he would not submit to the test, and he was transported to Greencastle Police Headquarters.

At headquarters, petitioner once again was advised of the implied consent law by Officer Bourn, and was told he would be taken to Waynesboro Hospital for the test. Once again, petitioner refused to undergo the testing. Thereafter, petitioner was formally charged with driving under the influence, and was taken before a district justice for preliminary arraignment, following which he was released on his own recognizance.

On May 17, 1990, PennDOT notified Mr. Kosar of the suspension of his driving privileges for violation of the ''implied consent'' provision of the Vehicle Code, 75 Pa.C.S. §1547, which provides in part as follows:

''(a) *General rule* — Any person who drives, operates or is in actual physical control of the movement of a motor vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating, or in actual physical control of a motor vehicle:

"(1) while under the influence of alcohol or a controlled substance or both;. . ." 75 Pa.C.S. §1547.

Petitioner claims initially that PennDOT's action is illegal as the implied consent law is applicable in the factual scenario set forth in this case, viz, that he was not operating, driving or in actual physical control of the movement of a motor vehicle, and thus, the averment is, the police did not possess the authority to request that he submit to a blood alcohol test.

It is clear that for the implied consent provision to apply, the request for testing must be supported by reasonable grounds for the officer to believe that petitioner was in violation of the DUI law, 75 Pa.C.S. §3731(a). *Commonwealth, Department of Transportation v. Wysocki,* 517 Pa. 175, 535 A.2d 77 (1987).

This case is somewhat unusual due to the fact that the petitioner was asleep in a lawfully parked vehicle, whose engine was turned off, and all mechanical and electrical features of the vehicle were turned off at the time of the officer's observation. While the keys were in the ignition, the ignition switch was in the intermediate "on" position, which causes dashboard lights to be on, and the petitioner was sleeping heavily. At that time, the only additional information the officer possessed was that his department had received a complaint of a suspicious vehicle, presumably petitioner's, at the location at which petitioner was found.

There is no question that the officer acted properly to inquire of petitioner's intentions, and that his subsequent observations of petitioner could lead a reasonable person to conclude that petitioner was under the influence of alcohol to such an extent that

he was incapable of safe driving. The more significant question is whether a person in the position of Mr. Kosar, and the information available to the officer at the time, would lead a reasonable person to believe that petitioner was driving, operating or in actual physical control of the movement of any vehicle. See 75 Pa.C.S. §1547(a).

Clearly, the officer did not have information that petitioner was "driving" the vehicle. The vehicle was not in motion, nor did the officer possess information that would lead a reasonable person to conclude that it had recently been in motion. However, the question remains as to whether the observations of the officer would allow a reasonable person in the position of the officer to conclude that petitioner was either operating or in actual physical control of the movement of the vehicle.

We have found no appellate case dealing with this precise factual scenario. However, in *Commonwealth v. Crum*, 362 Pa. Super. 110, 523 A.2d 799 (1987), the court dealt with interpreting these provisions:

"[T]he concept 'actual physical control' in the present chemical test section conveys the same meaning as that which the Superior Court had accorded to the concept of operating and having physical control as involving control of the movements of either the machinery of the motor vehicle or of the management of the vehicle itself, without a requirement that the entire vehicle be in motion." *Crum, supra,* citing from *Commonwealth v. Farner*, 90 Pa. Commw. 201, 205, 494 A.2d 513, 515-6 (1985).

In *Crum, supra,* defendant was found by a police officer slumped over the front seat of his motor vehicle which was parked along a state highway with its lights on and engine running. Those obser-

vations were found sufficient to constitute a violation of the DUI statute, on the ground the occupant was in actual physical control of the machinery of the vehicle. While the facts in *Crum* obviously are somewhat different than those in the instant case, most significantly the fact the engine was running and the lights were on in *Crum,* while they were not in the instant case, we nonetheless feel compelled to reach the same result.

We observe little logical difference in the two situations as, in either case, the intoxicated front seat occupant of the vehicle clearly was in a position to exercise control over the machinery of the vehicle. Crum simply would have had to reach the transmission lever to engage the vehicle to commence movement, while petitioner simply had to turn the key and move the transmission lever, and we think that in including the provision regarding "being in actual physical control of the movement of a motor vehicle" is intended to apply to this situation.

Further, it is noted that in a license suspension case based upon a violation of the implied consent law it is necessary that the Commonwealth prove four elements: (1) an arrest for DUI; (2) a request that the defendant submit to chemical testing; (3) a warning that refusal would result in a suspension of the operating privileges; and (4) a refusal. *Luckey v. Commonwealth,* 131 Pa. Commw. 155, 569 A.2d 1008 (1990). All four elements have been proven herein, and thus the Commonwealth has met its burden of proof. We note specifically that, contrary to petitioner's assertion, we find that petitioner was warned of the effect of a refusal to submit to the testing.

Finally, petitioner alleges, as we understand it, that the police acted in a manner that did not comply with the requirements set forth in *Commonwealth v. O'Connell,* 521 Pa. 242, 555 A.2d 873 (1989), in which it was held, inter alia, that:

"[W]here an arrestee requests to speak to or call an attorney, or anyone else, when requested to take a breathalyzer test, we insist that in addition to telling an arrestee that his license will be suspended for one year if he refuses to take a breathalyzer test, the police instruct the arrestee that such rights are inapplicable to the breathalyzer test and that the arrestee does not have the right to consult with an attorney or anyone else prior to taking the test."

There is a dispute in the instant case as to whether or not petitioner requested an attorney. We find more credible the officer's testimony that petitioner made no such request, and thus the holding in *O'Connell, supra,* is inapplicable.

However, even if we accept petitioner's version, which is that he requested an attorney, and was told he could not have one, in essence, in connection with the breathalyzer, the advice essentially was correct. As noted in *Commonwealth, Department of Transportation v. Tomczak,* 132 Pa. Commw. 38, 571 A.2d 1104 (1990), the rule established in *O'Connell* is applicable in a case where a person is confused about the interplay between the right to an attorney (from the *Miranda* warnings) and the request that he submit to a chemical test to determine the presence of alcohol. In *O'Connell* the confusion may have led the driver to refuse the proffered test in the mistaken belief he could consult with an attorney first.

In the instant case, there is no such confusion, even under petitioner's version, in which he was

flatly told he could not see an attorney prior to deciding on whether to take the proffered test. He was also told that his refusal would lead to a one-year suspension of his driver's license, but he nonetheless refused to take the test, and we thus on a factual basis reject petitioner's second argument.

Under the circumstances, we find PennDOT's position is correct.

## ORDER OF COURT

Now, September 14, 1990, the license suspension appeal of Franklin J. Kosar is denied, and the license suspension previously imposed by the Pennsylvania Department of Transportation may be reimposed upon due notice to petitioner by the Commonwealth.