581 A.2d 252

**Gary Richard WILSON, Appellant,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, Appellee.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 23, 1990.

Decided Sept. 28, 1990.

340

Peter U. Hook, Uniontown, for appellant.

William A. Kuhar, Jr., Asst. Counsel, with him, Timothy P. Wile, Asst. Counsel in Charge of Appellate Section, Harold H. Cramer, Asst. Chief Counsel, and John L. Heaton, Chief Counsel, Harrisburg, for appellee.

Before DOYLE and COLINS, JJ., BARRY, Senior Judge.

## OPINION

BARRY, Senior Judge.

Gary Richard Wilson appeals from an order of the Court of Common Pleas of Fayette County that dismissed his appeal from the one-year suspension of his driver's license by the Pennsylvania Department of Transportation (DOT) for refusal to submit to a breathalyzer test, as required by the implied consent law, section 1547(b) of the Vehicle Code, 75 Pa.C.S. § 1547(b). The issue presented is whether, where a person arrested for drunken driving displays confusion concerning the applicability of rights reflected by *Miranda* [1] warnings to the request to submit to a chemical test, the police have a duty to explain that such rights do not apply, even if they did not cause the confusion by previously reading *Miranda* warnings.

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

The material facts are not disputed. On June 17, 1989, a Uniontown police officer was notified that a car with Wilson's license plate number had struck another vehicle and left the scene. The officer went to the area of Wilson's home and saw Wilson's car sitting at an intersection in the wrong lane. After stopping the car the officer observed that Wilson's eyes were bloodshot, his speech was slurred, and the car smelled of alcohol. The officer arrested Wilson for driving under the influence.

Wilson consented at that point to take a breath test. The officer took him to the state police barracks. There a state police officer explained the implied consent law to Wilson, including the fact that Wilson would lose his license for a year if he refused to take the test. Wilson asked to make a telephone call. The officer told him that he could make all the calls he wanted after taking the test. Wilson then refused to take the test until he was permitted to make his telephone calls. The police did not permit him to make any telephone calls, and he refused several other requests to take the test. Ultimately, he went to sleep. The police did not read *Miranda* warnings to Wilson at any time during these events. Also, they did not explain to him that the right to talk to an attorney does not apply to the request under section 1547(b) to submit to a chemical test.

The police reported a refusal to submit to a chemical test to the DOT, which then sent Wilson notice of the scheduled suspension of his license. He appealed, and, after a de novo hearing, the common pleas court entered an order dismissing the appeal and affirming the suspension. The court's opinion was based on an interpretation of the Supreme Court's opinion in *Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 521 Pa. 242, 555 A.2d 873 (1989), as requiring the police to explain to an arrestee that the rights reflected in *Miranda* warnings do not apply to chemical testing only where the police have previously given *Miranda* warnings.

Our scope of review of a decision of the court of common pleas in a license suspension case is limited to determining

whether the findings of fact of the trial court are supported by competent evidence and whether the court committed an error of law or an abuse of discretion in reaching its decision. *O'Connell*, 521 Pa. at 248, 555 A.2d at 875.

In *O'Connell*, a driver was arrested after he struck two parked cars and failed a field sobriety test. The arresting officer gave him *Miranda* warnings at the scene of the accident, and the police required him to complete a written form relating to *Miranda* rights at the police station. In response to the question asking whether he wanted to talk to a lawyer or have a lawyer present during questioning, he first wrote "No" but then changed that to "Yes". The police then requested that he take a breathalyzer test, and he refused. He testified later that he refused because he had not been permitted to talk to his attorney, although the officer testified that he gave no reason.

The Supreme Court stated that in license suspension cases under section 1547(b) of the Vehicle Code, the Commonwealth must establish that the driver (1) was arrested for driving under the influence of alcohol, (2) was asked to submit to a breathalyzer test, (3) refused to do so, and (4) was specifically warned that a refusal would result in the revocation of his driver's license. Once the Commonwealth meets this burden, the responsibility shifts to the driver to prove that he was not capable of making a knowing and conscious refusal to take the test. Whether the driver has met this burden is a factual determination to be made by the trial court. *Id.*, 521 Pa. at 248–49, 555 A.2d at 876.

The trial court had found as a fact that the driver communicated his reason for refusing to the police and concluded that the driver had met his burden of proving that his refusal was not knowing and conscious. On appeal, this Court examined the testimony and concluded that it did not support the trial court's finding that the driver communicated his reason. Clarifying our earlier holdings on the subject, we stated that the duty to inform an arrestee that the *Miranda* right to counsel does not apply to the breathalyzer test arises only where the arrestee responds to the

request that he take the test with an inquiry regarding whether he may consult with someone before making a decision. *Department of Transportation, Bureau of Traffic Safety v. O'Connell,* 99 Pa.Commonwealth Ct. 410, 415, 513 A.2d 1083, 1085 (1986). Because we thought that the record did not support a finding that the driver made such an inquiry, we concluded that he had not met his burden and reversed.

The Supreme Court first held that this Court exceeded its scope of review by, in effect, making its own findings of fact from the testimony. The court went on to consider the driver's contention that he refused because he was confused when the request to take the breath test followed closely after the *Miranda* warnings. The court noted that a common scenario is one where the police, as part of their criminal investigation, proceed with *Miranda* warnings and at some point (usually when the driver asks to see his lawyer) stop questioning and abruptly change "hats" and ask the driver to submit to the breathalyzer test. If the arrestee hesitates and attempts to exercise his *Miranda* right by asking for a lawyer or asking to make a phone call, the police record a refusal. *O'Connell,* 521 Pa. at 251, 555 A.2d at 877.

The court described this state of affairs as being unacceptable because it is fraught with pitfalls for an arrestee not trained to recognize the difference between civil and criminal investigations and because it becomes a source of accusations of police manipulation. *Id.,* 521 Pa. at 252, 555 A.2d at 877. Noting that the law has always required that the police tell the arrestee of the consequences of a refusal so that he can make a knowing and conscious choice, the court held:

Accordingly, where an arrestee requests to speak to or call an attorney, or anyone else, we insist that in addition to telling an arrestee that his license will be suspended for one year if he refuses to take a breathalyzer test, the police instruct the arrestee that such rights are inapplicable to the breathalyzer test and that the arrestee does not

have the right to consult with an attorney or anyone else prior to taking the test.

An arrestee is entitled to this information so that his choice to take a breathalyzer test can be knowing and conscious and we believe that requiring the police to qualify the extent to the right to counsel is neither onerous nor will it unnecessarily delay the taking of the test.

Since the course of conduct of the police creates the confusion in these cases, it is appropriate to place the duty on them to clarify the extent of the right of counsel when asking arrestees to take breathalyzer tests thereby insuring that those arrestees who indicate their confusion over their Miranda rights, are not being misled into making uninformed and unknowing decisions to take the test.

521 Pa. at 252–53, 555 A.2d at 878.

In the present case, Wilson contends that the above holding, coupled with a later application of *O'Connell* by the court in the case of *Commonwealth v. McFadden*, 522 Pa. 100, 559 A.2d 924 (1989), establishes a principle that in order for an arrested driver's refusal to submit to testing to be knowing and conscious, the police must inform the arrestee before taking the test that the *Miranda* warning's right to counsel does not apply. In *McFadden*, a driver arrested for driving under the influence was given *Miranda* warnings both orally and in written form. He then refused to submit to a breathalyzer test and asked to make a telephone call. After making his call, he became belligerent. The police placed him in a jail cell overnight and recorded a refusal.

The common pleas court and this Court both rejected his argument that his refusal was not knowing and conscious because he was not told that the *Miranda* right to counsel did not apply to the breathalyzer test. In ruling on his appeal by permission, the Supreme Court stated:

Appellant renews his argument that for a refusal to take a breathalyzer test to be knowing and conscious, a licen-

see must be told, prior to taking the test, that the *Miranda* right to counsel is not applicable. We agree and this issue is now controlled by our recent decision in *Department of Transportation, Bureau of Traffic Safety v. O'Connell,* 521 Pa. 242, 555 A.2d 873 (1989).

Since the police did not give Appellant the information required by *O'Connell* to satisfy our requirements that a licensee make a knowing and conscious refusal, and since Appellant has preserved this issue on appeal to us, we will apply the holding of *O'Connell* to this case and conclude that Appellant has sustained his burden to demonstrate that his refusal was not knowing and conscious.

*McFadden,* 522 Pa. at 102–03, 559 A.2d at 925. Wilson notes that the *McFadden* holding is not based on an express rationale relating to demonstrated confusion, and, in fact, makes no reference to confusion at all. Wilson concludes that the court now requires that any arrestee be advised that the *Miranda* right to counsel does not apply to the request to take a breathalyzer test, as part of the overall requirement that an arrestee be fully advised of his rights in order for him to make a knowing and conscious decision.

DOT responds that the key to the court's rationale in *O'Connell* was the driver's confusion, created by the conduct of the police during the administration of lawful warnings under both *Miranda* and the implied consent law. DOT contends that, to prevail, the driver must establish the *fact* of confusion *caused by* the conduct of the police. Because the police did not give Wilson *Miranda* warnings, DOT asserts that they did not cause any confusion he may have experienced.

DOT finds further support for its analysis in the recent decision of this Court in *Luckey v. Commonwealth,* 131 Pa.Commonwealth Ct. 155, 569 A.2d 1008 (1990). There the arresting officer asked the driver when he placed him in the police car if he would consent to a blood test and explained the consequences of refusal. The driver refused. At the police station the driver was permitted to make telephone calls to contact an attorney. After he made his calls the

police gave him *Miranda* warnings. When an attorney arrived at the station and asked if the driver could still take the test, the police said that it was too late. The trial court dismissed the driver's appeal; on his appeal to this Court, he argued that *O'Connell* and *McFadden* required reversal.

This court quoted the *O'Connell* holding and stated: This holding presupposes that the order of events is that the *Miranda* warnings were given prior to the request to submit to testing and that there was confusion on the licensee's part regarding his right to refuse to take the test until he has at least spoken to his attorney.

The present case, however, is factually distinguishable from *O'Connell.* The order of events required to 'activate' the *O'Connell* rule is not present here. Unlike *O'Connell,* here Licensee was arrested for driving under the influence; he was requested to submit to a breathalyzer test; he next refused to submit to the test; he then requested the police to contact his attorney for him; and finally, he was read his *Miranda* rights. Accordingly, there was no possible way Licensee could have been confused over his right to confer with counsel before he refused the test....

... The Commonwealth therefore satisfied its burden, and since Licensee did not request his attorney until *after* he refused to take the breathalyzer test, we perceive no error by the trial court in finding *O'Connell* to be distinguishable and, therefore, inapplicable.

*Luckey,* 131 Pa.Commonwealth Ct. at 160–61, 569 A.2d at 1010–11.

DOT argues that the facts of the present case are closer to those of *Luckey* than to those of *O'Connell,* because here no *Miranda* warnings were given. DOT acknowledges the difference that here the driver asked to make a phone call when he was requested to take the test; however, DOT argues that *O'Connell* requires that the police must have caused the driver's confusion by advising him, before he decided whether to take the test, of his right to consult with a lawyer under *Miranda.*

This Court has addressed the meaning of *O'Connell* in several other cases since *Luckey*. In *Department of Transportation, Bureau of Driver Licensing v. Tomczak*, 132 Pa.Commonwealth Ct. 38, 571 A.2d 1104 (1990), the arrested driver was given both *Miranda* and implied consent law warnings and he refused to take a breathalyzer test. At the hearing before the trial court he testified that he did not fully understand the consequences of refusing to take the test because of his nervousness over the ordeal of being arrested. This Court distinguished *O'Connell* because the arrestee in *Tomczak* never requested to speak to an attorney nor told the officers that he was refusing because he first wanted to talk to an attorney, and he did not later testify that he refused because of confusion relating to the applicability of *Miranda* rights. We stated that the kind of confusion claimed by that driver was not the confusion to which *O'Connell* referred, and we declined to extend *O'Connell* to every situation in which a driver says that he is confused.

> We distinguished *McFadden* as follows:
>
> Once the licensee [in *McFadden* ] refused to take the test and then asked to make a telephone call, it was the affirmative a [sic] duty under *O'Connell* to inform the licensee that his *Miranda* rights did not apply and that he did not have the right to speak to an attorney or anyone else before taking a breathalyzer test. That case is distinguishable from the case *sub judice* in that Tomczak never testified that he asked to speak to an attorney or anyone else after refusing to submit to a breathalyzer. He never testified to saying anything that would signal to the police that he thought his *Miranda* rights applied to taking the breathalyzer test.

*Tomczak*, 132 Pa.Commonwealth Ct. at 45–46, 571 A.2d at 1108.

In *Department of Transportation, Bureau of Driver Licensing v. Acton*, 132 Pa.Commonwealth Ct. 340, 572 A.2d 868 (1990), the arrested driver who refused to take a breathalyzer test did not testify at all at the hearing before

the trial court. The arresting officer testified that he could not recall whether he gave the driver *Miranda* warnings, although he said he did give implied consent law warnings. Under those circumstances we concluded that the driver, having failed to present any evidence, did not meet his burden of showing that he was unable to make a knowing and conscious refusal.

Finally, in *Browne v. Department of Transportation, Bureau of Traffic Safety*, 132 Pa.Commonwealth Ct. 612, 574 A.2d 114 (1990), this Court reconsidered our earlier affirmance of a license suspension in the light of *O'Connell*, at the direction of the Supreme Court. There the arrested driver was given both implied consent and *Miranda* warnings, and he refused to submit to a test. He also did not testify before the trial court. Because there was no indication that the driver requested to speak to an attorney and no finding by the trial court that he was under a mistaken belief that his right to remain silent included the right to refuse the breathalyzer, we affirmed the suspension of his driver's license.

█ The foregoing review of cases interpreting *O'Connell* leads us to conclude that DOT is not correct in its contention that proof of the giving of *Miranda* warnings before a breath test refusal is absolutely required to make *O'Connell* applicable. Although the facts of *O'Connell* involved contemporaneous *Miranda* and implied consent law warnings, the holding of the case went beyond those narrow circumstances. The rationale of the case was not based on an effort to punish the police for confusing an arrested driver and then failing to correct the confusion. Rather, the object of *O'Connell* was to assure that drivers do not lose their licenses for refusals that were not knowing and conscious. We construe the *O'Connell* rule to mean that, where an arrestee requests to speak to an attorney or anyone else when requested to take a breathalyzer test, the police must tell him that such rights are not applicable to the test. 521 Pa. at 252, 555 A.2d at 878. That rule does

not require a previous express provision of *Miranda* warnings by the police.

In *Luckey,* this Court stated that *O'Connell* presupposed the giving of *Miranda* warnings; however, even there we stated that the fact that the driver did not request his attorney until *after* he refused the test was the basis for distinguishing *O'Connell.* In *Tomczak, Acton* and *Browne* the lack of any evidence that the driver was confused over the applicability of *Miranda* rights, in the form of a request to talk to an attorney before deciding whether to take the test or otherwise, was the basis for our concluding that *O'Connell* did not apply.

■ In the present case both Wilson and the police testified that he refused to take the breathalyzer test until he was allowed to make a phone call. That conduct is entirely consistent with a belief on his part that *Miranda* rights applied to his decision to take the test. Further, his expressly linking his response to the testing request to his demand to make a phone call should have signaled to the police that his response to the request was based on *Miranda*-related confusion. This is precisely the kind of evidence that we said was missing in *Tomczak.*

That the police did not create Wilson's awareness of his rights is not determinative. Where an arrested driver refuses to submit to chemical testing unless he is first permitted to make a telephone call, *O'Connell* requires that the police instruct the driver that such rights are not applicable. The police did not do that in this case.

Accordingly, the trial court erred by holding that *O'Connell* did not apply here simply because the police had not provided Wilson with *Miranda* warnings.[2] Because the

**2.** The foregoing discussion does not go so far as to adopt Wilson's position that *O'Connell* means that no refusal of a request to submit to chemical testing is knowing and conscious unless the police have expressly instructed the driver that *Miranda* rights do not apply to the request. Although such a rule would be desirable, and it might have the beneficial effect of eliminating almost all cases in this troublesome area, *O'Connell* did not establish such a general requirement, and *McFadden* did not unambiguously extend *O'Connell.*

evidence indicated that Wilson's refusal to submit to the breathalyzer test resulted from his confusion over the applicability of his rights under *Miranda* to the request to submit to the test, and the police did not explain to him that such rights do not apply to that request, we shall reverse the decision of the trial court.

## ORDER

NOW, September 28, 1990, the order of the Court of Common Pleas of Fayette County, dated October 27, 1989, at No. 1385 of 1989, G.D., is reversed. The appeal of Gary Richard Wilson from the suspension of his driver's license by the Department of Transportation is sustained.