584 A.2d 386

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant,**

v.

**Richard COURSON, Appellee.**

Commonwealth Court of Pennsylvania.

Submitted July 6, 1990.

Decided Dec. 11, 1990.

William A. Kuhar, Jr., Asst. Counsel, with him, Timothy P. Wile, Asst. Counsel in Charge of Appellate Section, Harold H. Cramer, Asst. Chief Counsel, and John L. Heaton, Chief Counsel, Pittsburgh, for appellant.

Howard T. Gilfillan, with him, Blane M. Puskaric, Gilfillan & Grimm P.C., Pittsburgh, for appellee.

Before SMITH and PELLEGRINI, JJ., and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

This is an appeal by the Department of Transportation, Bureau of Driver Licensing (DOT) from the order of the Court of Common Pleas of Allegheny County, dated December 6, 1989, which sustained Richard Courson's (Courson) appeal of his driver's license suspension. Courson's license had been suspended pursuant to what is popularly called the Implied Consent Law, found at Section 1547 of the Vehicle Code (Code), 75 Pa.C.S. § 1547.[1]

---

1. Section 1547 provides, in relevant part:

(a) General rule.—Any person who drives, operates or is in actual physical control of the movement of a motor vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a motor vehicle:

On July 12, 1989, a police officer for the Borough of Swissvale observed a car being driven erratically. The officer stopped the driver, Courson, and noticed an odor of alcohol on his breath. The officer asked Courson to exit the vehicle and perform field sobriety tests, which he was unable to satisfactorily complete. The officer placed Courson under arrest for driving under the influence of alcohol and transported him to a nearby hospital in order to obtain a blood sample for testing. The officer did not give *Miranda* warnings.[2]

At the hospital, Courson refused to submit to the blood test. Conflict exists in the testimony as to when the warning required under the Implied Consent Law was given. The arresting officer testified that he gave Courson the warning at the hospital. (N.T. pp. 6, 12, 20) Courson testified that the officer gave him the warning after they had left the hospital and while the officer drove him home. (N.T. pp. 17, 18) In either event, Courson does concede that he was told the consequence of refusing to submit to the blood test.

Thereafter, Courson received notice that his driver's license was to be suspended for a period of one year. He appealed to the Court of Common Pleas of Allegheny County. The trial court determined that the arresting officer's

(1) while under the influence of alcohol or a controlled substance or both; or

. . . . .

(b) Suspension for refusal.—
(1) If any person placed under arrest for a violation of section 3731 (relating to driving under influence of alcohol or controlled substance) is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person for a period of 12 months.
(2) It shall be the duty of the police officer to inform the person that the person's operating privilege will be suspended upon refusal to submit to chemical testing.
(3) Any person whose operating privilege is suspended under the provisions of this section shall have the same right of appeal as provided for in cases of suspension for other reasons.

2. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

failure to give Miranda warnings to Courson at the time of his arrest was fatal to DOT's case because the officer failed to advise Courson that his right to consult with an attorney does not apply to the request for chemical testing. The trial court stated that it interpreted the Supreme Court's decisions in *Commonwealth v. McFadden*[3] and *Department of Transportation, Bureau of Traffic Safety v. O'Connell*[4] to require such a finding. Accordingly, the trial court sustained Courson's appeal.

DOT argues here that Courson failed to meet his burden of establishing that he was unable to make a knowing and conscious refusal to submit to chemical testing due to confusion resulting from the conduct of the police officer.[5] Accordingly, it argues, no signal was given to the officer which would alert him to clarify Courson's rights in this context as mandated by the *O'Connell* decision and its progeny. We agree.

In a license suspension appeal under Section 1547(b) of the Code, DOT must establish that the driver involved: (1) was arrested for driving while under the influence; (2) was asked to submit to a chemical test; (3) refused to do so; and (4) was specifically warned that a refusal would result in the suspension of his driver's license. *O'Connell.* All of these facts were established in the present case. Once DOT has met this burden, it is the driver's responsibility to prove that he was not capable of making a knowing and conscious refusal. *Id.*

In *O'Connell,* the Supreme Court addressed the issue of confusion which arises when a driver is given the *Miranda* warnings and the Implied Consent Law warning and then attempts to exercise his or her perceived right to consult an

3. 522 Pa. 100, 559 A.2d 924 (1989).

4. 521 Pa. 242, 555 A.2d 873 (1989).

5. Our scope of review is limited to a determination of whether the findings of the trial court are supported by competent evidence, whether there has been an erroneous conclusion of law, or whether the trial court's decision demonstrates a manifest abuse of discretion. *Department of Transportation, Bureau of Driver Licensing v. Georgiadis,* 116 Pa.Commonwealth Ct. 563, 542 A.2d 225 (1988).

attorney before submitting to chemical testing, at which point a refusal is recorded. Finding that course of events to be unsatisfactory, the Court held:

> Accordingly, where an arrestee requests to speak to or call an attorney, or anyone else, when requested to take a breathalyzer test, we insist that in addition to telling an arrestee that his license will be suspended for one year if he refuses to take a breathalyzer test, the police instruct the arrestee that such rights are inapplicable to the breathalyzer test and that the arrestee does not have the right to consult with an attorney or anyone else prior to taking the test.

> .    .    .    .    .

> Since the course of conduct of the police creates the confusion in these cases, it is appropriate to place the duty on them to clarify the extent of the right of counsel when asking arrestees to take breathalyzer tests *thereby insuring that those arrestees who indicate their confusion over their Miranda rights,* are not being misled into making uninformed and unknowing decisions to take the test.

(521 Pa. 242, 252–253, 555 A.2d 873, 878) (emphasis added.)

In *McFadden,* which was decided three months after the *O'Connell* decision, the Supreme Court reiterated the principle that "for a refusal to take a breathalyzer test to be knowing and conscious, a licensee must be told, prior to taking the test, that the *Miranda* right to counsel is not applicable." 522 Pa. 100, 102, 559 A.2d 924, 925.

■  However, nowhere in either *O'Connell* or *McFadden* did the Court hold that giving *Miranda* warnings is necessary before asking the driver to submit to the chemical test, as the trial court in the present case erroneously determined. What *O'Connell* and *McFadden* require is that, when *Miranda* warnings are given, the driver must be told that those rights are not applicable to his or her decision to submit to chemical testing.

In the present case, both Courson and the arresting officer testified that the *Miranda* warnings were not given at any time. However, both Courson and the officer testified that Courson was told he would lose his license for one year if he refused the test, with their dispute involving at what point this information was given. The only evidence which would establish whether Courson evidenced confusion to the police officer is the testimony about Courson's behavior when asked to submit to the test. Courson testified on direct examination:

Q And tell us what happened at the hospital?

A He took me in, set me down, and he said something about taking a blood test, and I said I wouldn't take a blood test, and then the lady behind the thing—he told the lady. The lady pushed the paper to me, and I signed it, and we got up and walked back out.

Q Was there any discussion with the officer at that time involving the fact that you would lose your license for a period of one year in the event you did not take that blood test?

A Not right then, no.

\* \* \* \* \* \*

Q And you got back in the car, and where did he take you?

A Back to my bar.

Q Now he says he can't remember where he took you, but you went back to the bar.

Did you have a conversation with the officer while enroute back to your bar?

A Yes, sir.

Q And would you tell the Court the nature of that conversation, please.

A He said I'm stupid. I said, "Why?" He said, "You should have taken the test. You're going to lose your license for a year." I said, "Why didn't you tell me that before?"

Q Enroute back to the bar is that the first time that you were advised that you would lose your license for not taking that test?

A Yes.

(N.T., 12/6/89, pp. 15–17.)

The officer testified as follows:

Q And what was his response when you told him if he refused to take the blood test he would lose his license for a year?

A He didn't care.

Q He didn't care?

A No.

Q And did he say that to you?

A Yes.

(N.T., p. 6.)

This testimony is insufficient to establish that Courson portrayed to the officer that he was confused and unable to make a knowing and conscious refusal. The trial court did not comment on the issue of Courson's confusion but instead focused solely on the absence of *Miranda* warnings. The trial court's order states that it found Courson to be credible. If we assume that the trial court accepted Courson's testimony that he was not given the Implied Consent Law warning until after he left the hospital, then our next inquiry is whether Courson's refusal was cured by a post-warning opportunity to assent. *See Jackson v. Commonwealth*, 97 Pa.Commonwealth Ct. 602, 510 A.2d 396 (1986).

On cross-examination, Courson testified:

Q When he told you, pursuant to your testimony, that you were going to lose your license for a year, did you ask if you could take the test then?

A Take the test then?

Q Yes.

A No.

Q So, even in the car you didn't ask him?

A No. I didn't realize—I thought it was all over.

(N.T., p. 19.)

Regardless of whether Courson was given the warning at the hospital or during the ride home, the record clearly establishes that he never assented to the test. Therefore, we find that a refusal was properly recorded.

■ DOT next argues that the trial court erred by finding that the officer's failure to "read [Courson] his Miranda warnings at the time of arrest or any time thereafter is a notable omission that will defeat Commonwealth's case." (Opinion, p. 1.) We agree. A license suspension appeal is a civil proceeding. *Hando v. Commonwealth*, 84 Pa.Commonwealth Ct. 63, 478 A.2d 932 (1984). The *Miranda* rule is inapplicable to civil proceedings. *Armstead v. Dandridge*, 257 Pa.Superior Ct. 415, 390 A.2d 1305 (1978).

Accordingly, the order of the trial court is reversed and the license suspension is reinstated.

### ORDER

AND NOW, this 11th day of December, 1990, the order of the Court of Common Pleas of Allegheny County, dated December 6, 1989, is reversed.