635 A.2d 662

COMMONWEALTH of Pennsylvania, DEPARTMENT
OF TRANSPORTATION, BUREAU OF DRIVER
LICENSING, Appellant,

v.

Robert J. GILLESPIE.

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 9, 1993.

Decided Dec. 7, 1993.

Reargument Denied Feb. 11, 1994.

434

William A. Kuhar, Jr., Asst. Counsel, and Timothy P. Wile, Asst. Counsel In–Charge, Appellate Section, for appellant.

Kevin J. Fiore, for appellee.

Before SMITH and KELLEY, JJ., and SILVESTRI, Senior Judge.

SMITH, Judge.

The Department of Transportation, Bureau of Driver Licensing (DOT) appeals from the order of the Court of Common Pleas of Allegheny County sustaining Robert J. Gillespie's appeal from a one-year suspension of his operating privileges for refusal to submit to chemical testing pursuant to Section 1547 of the Vehicle Code, *as amended,* 75 Pa.C.S. § 1547.[1] The issues before this Court are whether the trial court erred in determining that the police officers were required to advise Gillespie of his *Miranda*[2] rights and explain the inapplicability of those rights to chemical testing procedures as required by *Department of Transportation, Bureau of Traffic Safety v. O'Connell,* 521 Pa. 242, 555 A.2d 873 (1989); whether the warning the police officers read to Gillespie sufficiently met the requirements set forth in *O'Connell;* and whether Gillespie met his burden to prove that he was unable to make a knowing and conscious refusal to submit to chemical testing.

Gillespie was arrested and charged with driving under the influence of alcohol on May 7, 1992. Gillespie appealed from DOT's notice that his operating privilege would be suspended and the trial court held a de novo hearing. DOT presented Officer Robert Stiglich who testified that he arrested Gillespie and requested him to submit to a breathalyzer test, Gillespie

1. Section 1547 provides in pertinent part:
   **(b) Suspension for refusal.—**
   (1) If any person placed under arrest for a violation of section 3731 (relating to driving under influence of alcohol or controlled substance) is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person for a period of 12 months.
   (2) It shall be the duty of the police officer to inform the person that the person's operating privilege will be suspended upon refusal to submit to chemical testing.

2. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

refused, and he advised Gillespie that a refusal to submit to the test would result in an automatic one-year suspension of his operating privileges. In addition, Officer Dennis Nagel testified that after he read and provided a copy of the police department's chemical testing warning to Gillespie, he started the intoxilyzer machine but Gillespie refused to blow into it. Officer Nagel advised Gillespie that his refusal to blow into the machine would constitute a refusal.

Gillespie admitted that Officer Nagel read the chemical testing warnings to him, and he replied that it was an inexact science and that he was confused and did not know what to do. Gillespie further testified that he did not "focus in" on what the officer was reading because the warning was read after he "sat there for a prolonged period of time" and he was experiencing "anxiety, a lot of apprehension, fear, and paranoia of what was going to happen to [him]." N.T., pp 14–15, 18–19. The trial court found that Gillespie manifested confusion as to his legal rights and the implications of refusing to submit to chemical testing. Relying on *Department of Transportation, Bureau of Driver Licensing v. Ingram,* 149 Pa. Commonwealth Ct. 170, 612 A.2d 634 (1992), *appeal granted,* 533 Pa. 619, 619 A.2d 701 (1993), the court concluded that although the implied consent law was sufficiently communicated to Gillespie, his appeal must be sustained because the police officers omitted *Miranda* warnings and an attendant explanation.

On appeal to this Court, DOT argues that the trial court erred in determining that the police officers were required to advise Gillespie of *Miranda* rights or explain that such rights are inapplicable to the chemical testing procedures because *Miranda* warnings are not required for a license suspension to be valid and Gillespie never requested to speak to a lawyer or anyone else when requested to submit to a chemical test. DOT further argues that even if the police officers were required to explain the inapplicability of *Miranda* rights pursuant to *O'Connell,* the warning Officer Nagel read and provided to Gillespie to read sufficiently met the requirements set forth in *O'Connell.* Finally, DOT argues that Gillespie failed to meet his burden of proving that he was physically or

mentally incapable of focusing on the warning form due to anxiety and consequently incapable of making a knowing and conscious refusal to submit to a chemical test.

In a driver's license suspension case, this Court's scope of review is limited to determining whether the trial court's findings of fact are supported by competent evidence and whether the trial court committed an error of law or an abuse of discretion in reaching its decision. *Department of Transportation v. Monohan,* 144 Pa. Commonwealth Ct. 328, 601 A.2d 489 (1991). When a licensee appeals a license suspension under Section 1547(b) of the Code, DOT must establish that the driver was arrested for driving under the influence of alcohol, was requested to submit to a chemical test, refused to do so, and was specifically warned that refusal would result in his or her license being suspended. *Cartwright v. Commonwealth,* 138 Pa. Commonwealth Ct. 325, 587 A.2d 909, *appeal denied,* 528 Pa. 645, 600 A.2d 196 (1991). Once DOT establishes its prima facie case, the burden shifts to the driver to prove that he or she was not capable of making a knowing and conscious refusal to take the test. *O'Connell; Cartwright.*

In the matter sub judice, the parties do not dispute that DOT established a prima facie case and therefore the only issue before this Court is whether Gillespie sustained his burden to prove that he was not capable of making a knowing and conscious refusal to submit to the breathalyzer test. In *O'Connell,* the Pennsylvania Supreme Court stated:

[W]here an arrestee requests to speak to or call an attorney, or anyone else, when requested to take a breathalyzer test, we insist that in addition to telling an arrestee that his license will be suspended for one year if he refused to take a breathalyzer test, the police instruct the arrestee that such rights are inapplicable to the breathalyzer test and that the arrestee does not have the right to consult with an attorney or anyone else prior to taking the test.

*Id.,* 521 Pa. at 252, 555 A.2d at 878. Consequently, whenever a licensee manifests confusion over the applicability of *Mi-*

*randa* rights to chemical testing, police officers are required to explain that such warnings are inapplicable to chemical testing. *See also Mihalaki v. Department of Transportation,* 525 Pa. 332, 580 A.2d 313 (1990) (*O'Connell* explanation required after licensee manifests confusion over his constitutional rights although no *Miranda* warnings were given). However, because the right to counsel is inapplicable to a request to submit to chemical testing, a police officer need not give *Miranda* warnings to a licensee before requesting the licensee to submit to chemical testing. *See Department of Transportation, Bureau of Driver Licensing v. Courson,* 136 Pa. Commonwealth Ct. 586, 584 A.2d 386 (1990).

In *Ingram,* the licensee was not advised of his *Miranda* rights but did request to speak to his attorney or parents. This Court determined that the licensee's request to speak to his attorney or parents represented an overt manifestation of his confusion over his constitutional rights and therefore the police officers were required to provide an *O'Connell* explanation to the licensee. Contrary to the trial court's ruling, the facts in *Ingram* are materially different than the facts in this case because the record does not contain any evidence that Gillespie requested to speak to an attorney or anyone else, nor is there any evidence that his confusion was due to statements the police officers made with respect to his rights under the implied consent law. On the contrary, Gillespie's testimony merely establishes that he did not listen to the warning the officer provided to him because he was feeling anxious and paranoid.

The facts in this case are more similar to those presented in *Department of Transportation, Bureau of Driver Licensing v. Tomczak,* 132 Pa. Commonwealth Ct. 38, 571 A.2d 1104 (1990). In *Tomczak,* a licensee claimed that due to nervousness caused by being arrested, he did not fully understand that his refusal to submit to a blood test would result in a loss of his driving privileges. This Court held that the licensee failed to establish that he did not comprehend the ramifications of refusal to submit to a chemical test because the licensee had no obvious medical infirmity and did not prove by competent

medical evidence that his inability to make a knowing and conscious refusal was medically related. Likewise, Gillespie has not established that he suffers with an obvious medical infirmity nor did he prove by competent medical evidence that he was unable to make a knowing and conscious refusal to submit to the breathalyzer test.

Further, since an *O'Connell* explanation was not required, this Court need not address DOT's argument that the warning read to Gillespie was adequate under *O'Connell*. Accordingly, the order of the trial court is reversed and Gillespie's license suspension is reinstated.

### ORDER

AND NOW, this 7th day of December, 1993, the order of the Court of Common Pleas of Allegheny County is reversed and the one-year suspension of Robert J. Gillespie's operating privilege is reinstated.

KELLEY, Judge, dissenting.

I respectfully dissent. I would affirm the trial court as I truly believe that in this case, as in all cases, *Miranda*[1] warnings should be mandatory. Only by giving the *Miranda* warnings and then the explanations do we avoid obvious confusion. It is well known through the various documentaries, visually and or audibly, that most people in this country are aware of the *Miranda* warnings. In fact, most people could recite them verbatim because of the intense exposure.

I believe there is obvious confusion when an explanation that you may not speak to an attorney or anyone else is given without *Miranda* warnings. That is directly contrary to what most people are aware are their rights under the constitution.

For these reasons, I would affirm the trial court.

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).