583 A.2d 31

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant,**

v.

**Jeffrey Lew FIEŚTER, Appellee.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 12, 1990.

Decided Nov. 28, 1990.

Timothy P. Wile, Asst. Counsel, in charge of Appellate Section, with him, Harold H. Cramer, Asst. Chief Counsel, and John L. Heaton, Chief Counsel, King of Prussia, for appellant.

John R. Bonner, Casale & Bonner, P.C., Williamsport, for appellee.

Before CRAIG, President Judge, and DOYLE, COLINS, PALLADINO, SMITH, KELLEY and BYER, JJ.

DOYLE, Judge.

Before us for consideration is the appeal by the Pennsylvania Department of Transportation (Department) from an order of the Court of Common Pleas of Lycoming County. That court sustained the appeal of Jeffrey Lew Fiester from a one-year suspension of his operating privilege im-

posed pursuant to Section 1547(b) of the Vehicle Code, 75 Pa.C.S. § 1547(b), due to his failure to submit to a blood test following his arrest for driving under the influence.

Fiester's suspension appeal was heard before the common pleas court on October 11, 1989, and the following relevant facts were established. While investigating a single-vehicle accident, Trooper O'Brien of the Pennsylvania State Police was advised that the driver of that vehicle had been taken by ambulance to a nearby hospital. Upon his arrival at the hospital, Trooper O'Brien encountered Fiester in the emergency room. There was an odor of alcohol about Fiester, his eyes were glassy and his speech was slurred. Trooper O'Brien placed Fiester under arrest for driving under the influence, advised him of his *Miranda*[1] rights, and further advised Fiester that under the implied consent provisions of the Vehicle Code his operating privilege would be suspended for twelve months if he refused to consent to a blood test. At that point, Trooper O'Brien asked Fiester to submit to a blood test and Fiester refused. Fiester then asked if he could decide the following day about the test, and Trooper O'Brien advised him that the decision could not wait and had to be made immediately. Following further iterations of the implied consent provisions, Fiester again refused to submit to a blood test.[2]

The common pleas court sustained Fiester's appeal based upon our Supreme Court's decision in *Commonwealth v. McFadden*, 522 Pa. 100, 559 A.2d 924 (1989), the facts of

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. In cases involving the suspension of a driver's license for refusal to submit to chemical testing, we have held in the past that the Department must prove four elements: (1) that the licensee was placed under arrest for driving under the influence; (2) that he or she was requested to submit to chemical testing; (3) that he or she was informed that a refusal to submit to such testing would result in a suspension of his or her operating privileges; and (4) that he or she refused. *Department of Transportation, Bureau of Driver Licensing v. Iannitti*, 100 Pa.Commonwealth Ct. 239, 514 A.2d 954 (1986). Based upon the record made before the common pleas court, it is clear that the Department established these elements. The only question before us, therefore, is whether Fiester's refusal to submit to the blood test was knowing and conscious.

which the court found to be indistinguishable from the instant case. The decision in *McFadden* was grounded upon the Supreme Court's prior decision in *Department of Transportation, Bureau of Traffic Safety v. O'Connell,* 521 Pa. 242, 555 A.2d 873 (1989), in which the Court stated:

> The law has always required that the police must tell the arrestee of the consequences of a refusal to take the test so that he can make a knowing and conscious choice....
>
> Accordingly, where an arrestee requests to speak to or call an attorney, or anyone else, when requested to take a breathalyzer test, we insist that in addition to telling an arrestee that his license will be suspended for one year if he refuses to take a breathalyzer test, the police instruct the arrestee that such rights are inapplicable to the breathalyzer test and that the arrestee does not have the right to consult with an attorney or anyone else prior to taking the test.
>
> An arrestee is entitled to this information so that his choice to take a breathalyzer test can be knowing and conscious and we believe that requiring the police to qualify the extent of the right to counsel is neither onerous nor will it unnecessarily delay the taking of the test.

*Id.,* 521 Pa. at 252–53, 555 A.2d at 877–78 (citations omitted).

Before this Court, the Department urges that we reverse the common pleas court and reinstate Fiester's license suspension on the ground that Fiester failed to "meet his burden of proving that he was confused as to his right to consult a lawyer prior to deciding whether to take a blood test due to the fact that Trooper O'Brien read him his *Miranda* rights." For the following reasons, we decline to adopt such a standard and we will affirm the common pleas court.

The Department contends that in order to make out a valid defense under *O'Connell,* the licensee must prove (1) that *Miranda* warnings were given prior to the request to submit to chemical testing; (2) that the licensee was con-

fused as to the applicability of the right to counsel regarding the chemical testing; and (3) that the police did not specifically inform the licensee that the *Miranda* right to counsel did not apply to the chemical testing. *The Department further contends that the licensee must also have indicated to the police at the time the request to submit to a chemical test was made that he or she was confused as to the applicability of the right to counsel.* Such is not the law under *O'Connell* and *McFadden.* The Department's position would limit the holding in those decisions in a manner we perceive not intended by the Supreme Court and in a manner not supported by the language of those decisions. The *O'Connell* Court stated that:

> The problem in this case, and many similar cases that have arisen, is that these requests to take breathalyzer tests take place as part of the investigation conducted by police in regards to a drunk driving charge which is criminal in nature. The police proceed with the *Miranda* warnings and at some point (usually when the driver asks to see his lawyer) stop questioning and abruptly change 'hats' and ask the driver to submit to the breathalyzer test. If the arrestee hesitates and attempts to exercise his *Miranda* right by asking for a lawyer or asking to make a phone call, a refusal is recorded.

521 Pa. at 251, 555 A.2d at 877.

█ Contrary to the Department's contention, there is no language in *O'Connell* which requires a licensee to *prove* that he or she was confused as to the inapplicability of the constitutional right to remain silent, or the constitutional right to counsel etc., before submitting to chemical tests. Rather, the Court's language in *O'Connell* clearly indicates that where the *Miranda* warnings precede the chemical test request as well as the implied consent warning, such a juxtaposition is *per se confusing.* Therefore, absent an explanation by the police of the inapplicability of the right to counsel to chemical testing, a licensee may make out a valid prima facie defense under *O'Connell* by a showing

that the *Miranda* warning preceded the request to submit to chemical testing.

If any doubt exists as to the parameters of this rule under *O'Connell,* it is dispelled by *McFadden.* In *McFadden* the Court held that the licensee's refusal to submit to a breath test was not knowing and conscious because the police did not provide him with the information required by *O'Connell.* The facts in *McFadden* are sketchy, but the decision clearly indicates that the licensee was given his *Miranda* rights first at the scene where he was arrested and again at the police station, this time in writing, and was then requested to submit to a breath test. He refused and asked to make a telephone call which request *was granted.*[3] Subsequent to making the call McFadden became belligerent and a refusal to take the test was recorded. We believe it is highly significant that despite the fact that McFadden did complete his telephone call the Supreme Court nevertheless held that he was still entitled to be informed that his *Miranda* rights did not apply to the breathalyzer test. Accordingly, we must conclude that where *Miranda* rights are followed by a request to take a chemical test and no explanation is given that the *Miranda* rights are inapplicable to the testing procedure, a *per se* violation of the *O'Connell* rule exists.[4]

**3.** The opinion does not indicate who McFadden called or what transpired during the conversation.

**4.** This is not to say, however, that in a particular case where the facts as found by the trial court indicate that the licensee was *not* confused over his or her rights, even though the licensee has been advised of his or her *Miranda* rights, *O'Connell* would be inapplicable. *See, e.g., Department of Transportation, Bureau of Driver Licensing v. Tomczak,* 132 Pa.Commonwealth Ct. 38, 571 A.2d 1104 (1990), wherein we held that *O'Connell* did not apply where a licensee was confused as to what he needed to do to avoid suspension of his license (*i.e.,* submit to the test), and not as to the applicability of his *Miranda* rights to chemical testing. Specifically, in *Tomczak* the licensee's testimony revealed that even though he was advised of the consequences of his refusal to take the test, it was not until after he refused that he fully realized the consequences of his refusal. *Cf. Appeal of Attleberger,* 136 Pa.Commonwealth Ct. 329, 583 A.2d 24 (1990, contemporaneously with this opinion) (*O'Connell* did not apply where licensee's confusion stemmed from a request to take a blood test after he submitted to a preliminary breath test). In *Attleberger* the licensee testified that because he took

In the instant case, Trooper O'Brien's testimony before the common pleas court established that Fiester was initially given the *Miranda* warnings, which he indicated that Fiester understood, and then Fiester was requested to submit to a blood test. While it is true that Fiester himself testified that he did not remember whether or not Trooper O'Brien read to him his *Miranda* rights, because he was "in and out of it," the Trooper's testimony supplied sufficient credible evidence, which the trial court accepted, to support the court's finding that *Miranda* rights *were* given. By its finding that Fiester's testimony in this respect was *not* credible, the trial court rejected a finding to the contrary.

Therefore, based on our discussion *supra,* this sequence of events was *per se* confusing. *O'Connell.* Absent an explanation to Fiester by Trooper O'Brien that the right to counsel does not apply to chemical tests, Fiester established a valid defense and the common pleas court properly sustained his appeal. The rule as we articulate today has the benefit of being easily understandable by the motoring public, certain in its application by our Commonwealth's law enforcement officers, and in full keeping with what we believe our Supreme Court held in the *O'Connell* and *McFadden* decisions.[5]

In brief response to the analysis provided by the dissent that we are hereby creating by judicial fiat what is contrary to "the clear language and intent" of Section 1547 of the Vehicle Code and contrary to the Supreme Court's decisions in *O'Connell* and *McFadden,* first, it is clear, of course,

a preliminary breath test at the arrest scene he did not think he needed to consent to the later request to take a blood test at a medical center. Further examples would be where a licensee testifies that he or she was *not* confused.

5. We hereby specifically overrule *Luckey v. Commonwealth,* 131 Pa. Commonwealth Ct. 155, 569 A.2d 1008 (1990); *Department of Transportation, Bureau of Driver Licensing v. Acton,* 132 Pa.Commonwealth Ct. 340, 572 A.2d 868 (1990) and *Browne v. Department of Transportation, Bureau of Traffic Safety,* 132 Pa.Commonwealth Ct. 612, 574 A.2d 114 (1990). Further, to the extent that any of this Court's other reported opinions suggest an analysis contrary to the one set forth today, they are hereby disavowed. *See Stehle v. Department of Transportation,* 132 Pa.Commonwealth Ct. 648, 574 A.2d 132 (1990).

even by acknowledgment in the dissent itself (dissent Op. p. 36), that "the words 'knowing and conscious refusal' are absent from Section 1547," and second, again by acknowledgement in the dissent (dissent Op. p. 36), "the 'knowing and conscious refusal' concept forms the foundation of the *O'Connell* and *McFadden* cases." Moreover, our analysis of what the Supreme Court has determined the law of this Commonwealth should be has been confirmed by the Supreme Court's most recent decision in *Mihalaki v. Commonwealth, Department of Transportation*, 525 Pa. 332, 580 A.2d 313 (1990), where the Supreme Court reversed a decision of this Court which had been filed prior to its *McFadden* (March 6, 1989) and *O'Connell* (June 7, 1989) decisions.

In *Mihalaki, no Miranda warnings had been given* and the licensee, out of his fear of needles, refused to submit to a blood test until after he contacted his attorney. When his attorney could not be immediately located, the police left the hospital and recorded a refusal. Thereafter, the licensee was able to contact his attorney and he then submitted to the blood test. Nevertheless, the Supreme Court reversed our decision and, in a one paragraph per curiam order with a reference only to *O'Connell*, abrogated the suspension on the basis of the trial court's conclusion that "once the driver requests to speak to a lawyer, the [police] officer *must inform* him he has no such right under the Motor Vehicle Code" (emphasis in original). In *Mihalaki* no patent confusion over *Miranda* rights existed. No *Miranda* warnings had been given. In fact, no confusion existed at all; the licensee was merely afraid of needles and insisted on talking to his lawyer first before submitting to the blood test.

■ Absent a situation which demonstrates a refusal on other grounds or for other reasons,[6] our Supreme Court therefore is clearly mandating, when *either* a licensee requests to speak to someone (either his attorney or someone else) *or Miranda* warnings are given, that an affirmative

6. *See supra* n. 4.

duty of explanation on the part of the police exists to dispel any reliance by the driver on his/her constitutional right to counsel *even in situations where there is no overt demonstration of confusion,* which principle of law directly contradicts the statement in the dissent (dissent Op. p. 38), that *"O'Connell* requires that *two* conditions be met before a warning that *Miranda* does not apply to [a] breathalyzer test," the first being that "the licensee must have been given *Miranda* warnings." (Emphasis in original.)

What we establish is a conscientious adherence to the law set out by our Supreme Court; we do not "provide escape routes for drivers who are highway menaces." Further, we do not believe that the Supreme Court pronouncements should be perceived as "an additional avenue through which drunk drivers can try to avoid basic societal responsibilities" (dissent Op. p. 36).

One further comment with regard to the dissent's analysis of the Supreme Court's decision in *McFadden* is necessary. The dissent suggests that the Supreme Court held "that the licensee did not make a knowing and conscious refusal because after the phone call McFadden did not demonstrate that he was no longer confused." We respectfully suggest that if this were so it would place an affirmative burden on the licensee to demonstrate that he was *not* confused, thereby destroying his own defense, an improvident if not procedurally illogical task.

Accordingly, based on the above, the order of the common pleas court is affirmed.

## ORDER

NOW, November 28, 1990, the order of the Court of Common Pleas of Lycoming County in the above-captioned matter is affirmed.

PALLADINO, Judge, dissenting.

I respectfully dissent. With the addition of the per se confusion rule to the amorphous concept of "knowing and

conscious refusals," I believe the majority is attempting to create legislation by judicial fiat which is contrary to the clear language and intent of 75 Pa.C.S. § 1547 and contrary to the supreme court's decisions in *Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 521 Pa. 242, 555 A.2d 873 (1989) and *Commonwealth v. McFadden*, 522 Pa. 100, 559 A.2d 924 (1989).

Critical to our inquiry regarding the duties of Commonwealth agents to licensed motor-vehicle operators (licensees) is recognition of the bedrock principle that the operation of motor vehicles on the highways of the Commonwealth is a privilege subject to such conditions as the legislature may see fit to impose, and is not a right protected by constitution. *Department of Transportation v. Wysocki*, 517 Pa. 175, 535 A.2d 77 (1987).

I begin by noting that among the conditions imposed upon the privilege to operate a motor vehicle in the Commonwealth is the implied consent to submit to chemical testing where there is reasonable cause to believe a licensee is driving while under the influence of alcohol, a controlled substance or both. Section 1547 of the Vehicle Code, 75 Pa.C.S. § 1547 controls and provides in pertinent part as follows:

(a) General rule.—Any person who drives, operates or is in actual physical control of the movement of a motor vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a motor vehicle:

(1) while under the influence of alcohol or a controlled substance or both; or

(2) which was involved in an accident in which the operator or passenger of any vehicle involved or a pedestrian required treatment at a medical facility or was killed.

(b) Suspension for refusal.—

(1) If any person placed under arrest for a violation of section 3731 (relating to driving under the influence of alcohol or controlled substance) is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person for a period of 12 months.

(2) It shall be the duty of the police officer to inform the person that the person's operating privilege will be suspended upon refusal to submit to chemical testing.

(3) Any person whose operating privilege is suspended under the provisions of this section shall have the same right of appeal as provided for in cases of suspensions for other reasons.

Section 1547 is a clear statement of the laudable legislative purpose to keep drunk drivers off the roads of the Commonwealth. The rule is rather simple. However, it is respectfully suggested that to pursue the analysis the court proposes would have the effect of transforming a simple rule by the legislature into a procedural morass and thereby provide escape routes for drivers who are highway menaces. An expansion of the "knowing and conscious refusal" standard could be perceived as an additional avenue through which drunk drivers can try to avoid basic societal responsibilities. In this light, a review of the law pertinent to section 1547 follows.

This court in prior decisions has interpreted section 1547 to require that where a licensee refuses to submit to a breathalyzer or blood test to determine blood alcohol levels, the Commonwealth to support a license suspension must first prove 1) that the licensee was placed under arrest for driving while under the influence of alcohol 2) that the arresting officer had reasonable grounds to believe that the operator was driving under the influence of alcohol; 3) that the licensee was requested by the officer to submit to a breathalyzer test; 4) that the licensee refused to do so; and 5) that the licensee was warned by the officer that failure to

submit to a test would result in a suspension of driving privileges. *Department of Transportation, Bureau of Driver Licensing v. Cavanaugh,* 115 Pa.Commonwealth Ct. 397, 540 A.2d 340 (1988).

After the Commonwealth has met these threshold requirements, the burden shifts to the licensee to prove that his refusal to submit to chemical testing was not knowing and conscious. *Department of Transportation, Bureau of Traffic Safety v. Passarella,* 7 Pa.Commonwealth Ct. 584, 300 A.2d 844 (1973). Because the "knowing and conscious refusal" concept forms the foundation of the *O'Connell* and *McFadden* cases relied upon by the majority, a history of the "knowing and conscious" concept as applied by this court to license suspensions is a necessary backdrop.

The words "knowing and conscious refusal" are absent from section 1547. Section 1547 does not require that a refusal be "knowing and conscious." Because driving a motor vehicle is not a constitutionally protected right, the "knowing and conscious refusal" standard was not added by the judiciary to make section 1547 constitutional. The knowing and conscious refusal standard has its origin in *Department of Transportation, Bureau of Traffic Safety v. Passarella,* 7 Pa.Commonwealth Ct. 584, 300 A.2d 844 (1973).

In *Passarella,* a police officer with reasonable grounds to believe that the licensee had been driving while intoxicated requested the licensee to submit to a breathalyzer and a blood test. The licensee refused. Before the trial court, the licensee testified that he had no recollection of the refusal because he suffered a blow to the head. The trial court concluded that the licensee had suffered a cerebral concussion and found that there was no willful refusal to undergo the chemical tests. This court cited *Commonwealth v. Gallagher,* 3 Pa.Commonwealth Ct. 371, 283 A.2d 508 (1971) for the proposition that the implied consent laws were intended to supply proof of the presence of intoxicants and provided "a means of accounting for aberrant behavior otherwise than as symptomatic of the inevitable blow on the

head." *Passarella*, 7 Pa.Commonwealth Ct. 587, 300 A.2d at 846 (quoting *Gallagher*, 3 Pa.Commonwealth Ct. at 374, 283 A.2d at 509). Taking the above quoted language from *Gallagher*, this court implied that a blow on the head would excuse a refusal to submit to a chemical test. The court, however, held that the licensee's failure to produce competent medical testimony as to the effects of his blow to the head negated the trial court's finding that the licensee suffered a concussion.

The *Passarella* court's reliance on *Gallagher* is merely misplaced dicta. *Gallagher*, in setting forth the reason for the legislative policy of requiring licensees to submit to chemical testing, stated as follows:

> The automobile has bestowed great material, intellectual and social benefits. By the agency of the bad driver, it has also visited upon a substantial minority of persons disasters of Apocalyptic dimensions. At the forefront of the instruments of destruction has been the drunken driver. [The implied consent laws] were intended to supply scientific, physiological proof of the presence or absence of the influence of intoxicants, as a substitute for or supplement to the observations of eyewitnesses, uncertain when made and usually required to be recalled long after the event. Furthermore, the jury could thus be provided a means of accounting for aberrant behavior otherwise than as symptomatic of the inevitable blow on the head.

*Id.*, 3 Pa.Commonwealth Ct. at 347, 283 A.2d at 509.

*Gallagher* merely explained the evidentiary benefit of receiving a chemical test. The evidentiary value of the breathalyzer test results has nothing to do with the question of whether a licensee has made a "knowing and conscious refusal." Clearly, the court in *Passarella* contrived a new defense to refusing to take the chemical test. From this inauspicious beginning, the requirement of a "knowing and conscious refusal" was born.

Since *Passarella*, numerous types of unknowing and unconscious refusals have been developed. Notable are the

following: licensee's obvious physical injuries make consent to a test impossible, *See Department of Transportation, Bureau of Traffic Safety v. Day*, 93 Pa.Commonwealth Ct. 49, 500 A.2d 214 (1985); non-english speaking licensees who have refused to take a chemical test have claimed their refusal was not "knowing and conscious" because they did not understand or were confused by the implied consent warnings, *See Im v. Department of Transportation*, 108 Pa.Commonwealth Ct. 206, 529 A.2d 94 (1987); with competent medical evidence, a condition produced by medication may preclude a knowing and conscious refusal, *See Department of Transportation, Bureau of Traffic Safety v. Cassidy*, 103 Pa.Commonwealth Ct. 582, 521 A.2d 59 (1987). All of these cases trace their concept of knowing and conscious refusal to *Passarella*. Finally, the supreme court recognized an unknowing refusal caused by confusion arising out of simultaneous recitations of *Miranda* rights and implied consent warnings where no explanation of the difference is supplied. *O'Connell* and *McFadden*. This type of defense is represented by the case currently before this court.

As stated above, the knowing and conscious refusal standard is not explicitly found in section 1547, the case law which promulgated the standard is not derived from a legitimate interpretation of the law, and the standard is not required by the U.S. or Pennsylvania Constitution. I do not seek here to overturn the knowing and conscious refusal requirement. However, because of its dubious heritage, the knowing and conscious standard must be strictly construed as it creates exceptions to the clear language and policy of the implied consent law.

In light of the foregoing, it is interesting to note that the supreme court in *O'Connell* clearly rests its requirement for a warning that *Miranda* rights do not apply to chemical testing upon a conclusion that certain licensees do not make knowing and conscious refusals.

In the case before us, the interpretation suggested misapplies the requirements of *O'Connell*. The majority con-

cludes that, where the recitation of *Miranda* rights are followed by a request to take a chemical test and no explanation is given that the *Miranda* rights are inapplicable to the testing procedure, a *per se* violation of the *O'Connell* rule exists. We respectfully disagree with this interpretation.

*O'Connell* requires that two conditions be met before a warning that *Miranda* does not apply to the breathalyzer test be given. First, the licensee must have been given *Miranda* warnings. The supreme court states as follows:

> We granted Appellant's petition for allowance of appeal to ... give guidance in the troublesome situation presented in cases such as this one, where a person is arrested for a crime, *read Miranda rights,* and is then told to submit to a breathalyzer test, but is not told that his right to see an attorney does not extend to taking this test.

*O'Connell* 521 Pa. at 251, 555 A.2d at 875 (emphasis added).

Second, the licensee must ask to speak to an attorney before the *O'Connell* warning is required. The supreme court held as follows:

> Accordingly, *where an arrestee requests to speak to or call an attorney, or anyone else,* when requested to take a breathalyzer test, we insist that in addition to telling an arrestee that his license will be suspended for one year if he refuses to take a breathalyzer test, the police instruct the arrestee that such rights are inapplicable to the breathalyzer test and that the arrestee does not have the right to consult with an attorney or anyone else prior to taking the test.

*Id.,* 521 Pa. at 253, 555 A.2d at 878 (emphasis added).

The supreme court clearly requires that the licensee request to speak to an attorney or someone else before *O'Connell* warnings come into play. This request is the objective evidence of the licensee's state of confusion as to the applicability of *Miranda* warnings to the request to take a chemical test. The practical purpose of *O'Connell* is to eliminate confusion caused by the simultaneous recitation of *Miranda* and implied consent warnings. *O'Connell* does

not explicitly state that a licensee no longer has the burden of proving that he did not make a knowing and conscious refusal. However, this is the result of the majority's decision. Such a conclusion is inconsistent with section 1547 and *O'Connell.*

The majority buttresses its conclusion that the simultaneous recitation of *Miranda* and implied consent warnings creates *per se* confusion by reliance on *Commonwealth v. McFadden,* 522 Pa. 100, 559 A.2d 924 (1989). *McFadden* does not obviate the requirement that a licensee ask to speak to an attorney or someone else. The facts in *McFadden* are sketchy but it is clear that the licensee refused to take a chemical test and *requested to make a phone call.* After he made the call, the licensee continued to refuse to submit to a test. From the record, we do not know what McFadden was told during his telephone conversation nor do we know to whom he talked. As a result however, it can be inferred that he remained confused as to the applicability of his *Miranda* right to counsel to the breathalyzer test. Consequently, the supreme court reversed the licensee's suspension holding that the licensee did not make a knowing and conscious refusal because after the phone call McFadden did not demonstrate that he was no longer confused. Therefore, the *O'Connell* warning was necessary.

In the case before this court, Fiester was arrested, read *Miranda* and implied consent warnings and refused to take a breathalyzer test. At no time did Fiester demonstrate any confusion as to the applicability of *Miranda* to the breathalyzer test by requesting to speak to an attorney. Therefore, the critical requirements of *O'Connell* and *McFadden* were not met so that *O'Connell* warnings were not necessary. Fiester did not meet his burden of proving that his refusal to take a chemical test was not knowing and conscious. Fiester's driving privileges should be suspended pursuant to Section 1547 of the Vehicle Code, 75 Pa.C.S. § 1547. Accordingly, I would reverse.

SMITH and BYER, JJ., join in this dissent.