## Mottershead v. PennDOT

*D. Bruce Cahilly,* for petitioner.
*Donald J. Smith, deputy attorney general,* for respondent.

LEETE, *P.J.,* October 21, 1991—This matter is before the court on a license suspension appeal filed by petitioner challenging the legal sufficiency of the notice given by the arresting officer when requesting petitioner to consent to a blood alcohol test pursuant to 75 Pa.C.S. section 1547, also known as the implied consent law. Pursuant to a hearing de novo held on September 9, 1991, and because certain factual matters were controverted, the court makes the following

### FINDINGS OF FACT

(1) Coudersport Police Officer Weidner and Coudersport Police Chief Zimath received a report of an accident involving an injury at approximately 11:50 p.m. on May 31, 1991, along U.S. Route no. 6 in Coudersport Borough.

(2) The officers arrived on the scene and observed petitioner lying on his back in the center of the road and petitioner's motorcycle overturned in the road.

(3) The officers recognized petitioner who was known to them as a Pennsylvania State Police officer. Out of concern for possible injuries, the officers tended to petitioner until the paramedics arrived. At that time, the officers detected the odor of alcohol on the breath of the petitioner, with Officer Weidner characterizing that odor as strong.

(4) Petitioner refused treatment by the paramedics and was helped into the officer's vehicle asking to be taken home. Petitioner was arguing and used foul language toward the paramedics. He refused to sign various forms relating to refusal of treatment.

(5) No field sobriety tests were performed by the officers due to concerns about possible injuries and the fact the petitioner was in obvious pain.

(6) After entering the police vehicle with the officers, petitioner was informed by Officer Weidner that he would be placed under arrest for D.U.I. Petitioner was transported briefly to the station and then to the hospital.

(7) Officer Weidner read petitioner his Miranda rights and then advised him that his license would be suspended if he refused to submit to a blood test. Petitioner repeatedly interrupted Officer Weidner and continued to use foul language apparently directed to hospital nurses.

(8) Petitioner responded to the warnings by saying: "I'm not signing and I'm not refusing. Do what the f--- you have to do."

(9) Shortly after arrival at the hospital, petitioner placed a call to his attorney, D. Bruce Cahilly, recalling a personal, unlisted telephone number in order to place the call.

(10) Chief Zimath then left the hospital, responding to another police call.

(11) Petitioner's injuries included broken ribs, abrasions and a concussion. His recollection of the incident was sketchy, but he does recall saying he would neither agree to nor refuse the test and wanted to call his attorney.

(12) Petitioner's attorney arrived at the hospital after the call was made and asked to speak with petitioner. Officer Weidner advised the attorney that petitioner was refusing the blood test.

(13) After 10 minutes later, Chief Zimath returned to the hospital while petitioner was consulting with his attorney. Officer Weidner indicated that petitioner had refused the blood test, but that he would wait for petitioner's attorney to meet with petitioner.

(14) After some period of time, petitioner's attorney came out of petitioner's room and indicated that petitioner would not sign anything relative to the consent form. Officer Weidner then presented a consent form and wrote "refused to sign" on the form. Petitioner's attorney and Chief Zimath signed as witnesses on the form.

(15) Officer Weidner would have permitted the petitioner to take a blood test after consulting with attorney Cahilly had the same been requested or permitted by the petitioner.

(16) At no time did either officer advise petitioner that his Miranda rights had no application to his decision to consent or refuse a blood test.

(17) Petitioner, a shift supervisor at the local State Police Barracks, claims he was completely unaware of the *O'Connell* decision, despite the fact a case involving *O'Connell* issues was heard in this court previously and involved an officer from the local barracks.

(18) Petitioner's refusal to take a chemical test for blood alcohol was not based on any confusion over the applicability of his Miranda rights to the proposed test.

## DISCUSSION

The issue presented here is whether a DUI defendant who was given his Miranda rights, but not advised that such rights do not apply to the chemical testing procedure pursuant to 75 Pa.C.S. section 1547(b), and who in fact conferred in person with his attorney before finally refusing to submit to chemical testing, is entitled to relief under the holding of the *O'Connell* decision and related cases.

The Department of Transportation has the initial burden to show that petitioner: "(1) was arrested for driving under the influence of alcohol; (2) was asked to submit to a chemical test; (3) refused to do so; and (4) was specifically warned that a refusal would result in a license suspension." *Larkin v. Commonwealth,* 109 Pa. Commw. 611, 531 A.2d 844, (1987). PennDOT met this burden at the hearing and this is not contested by the petitioner. Upon establishment of a prima facie case, the burden shifts to the petitioner to show that his refusal was not knowing and conscious. *Ford v. PennDOT,* 45 Pa. Commw. 268, 406 A.2d 240 (1979).

Petitioner, citing *PennDOT, Bureau of Traffic Safety v. O'Connell,* 521 Pa. 252, 555 A.2d 873 (1989) and its progeny, submits that he has met his burden to show a lack of knowing and conscious choice under the facts of the instant case. Specifically, he argues that he has established the failure of the officer to "instruct that such rights [to counsel under Miranda] are inapplicable to the . . . test and that the arrestee does not have the right to consult

with an attorney or anyone else prior to taking the test." *O'Connell,* at 878.

Subsequent cases have attempted to clarify the circumstances in which the *O'Connell* explanations are required. The *O'Connell* explanations are grounded in confusion about one's constitutional rights. *Appeal of Attleberger,* 136 Pa. Commw. 329, 583 A.2d 24 (1990). *O'Connell* explanations are required any time Miranda warnings are given prior to the request for a chemical test, whether or not Miranda warnings are given. *PennDOT v. Fiester,* 136 Pa. Commw. 342, 583 A.2d 31 (1990). Central to the rationale of all these cases is that an arrestee may perceive that Miranda rights to assistance of counsel apply to the decision to submit to a chemical test, and this error must be corrected by an adequate explanation before a request for counsel or a phone call can be deemed a refusal. The *Fiester* case in fact adopted a per se standard in that the *O'Connell* case holding applies anytime Miranda rights are given, followed by a request for a chemical test, with no explanation that Miranda rights do not apply to the testing procedure.

The Commonwealth Court in *Fiester* left the door open, however, for an exception in cases where the trial court makes a factual finding that no confusion existed. *Id.,* 583 A.2d at 34, fn. 4. In the instant case, the *O'Connell* explanation would have been appropriate and necessary had the matter ended there after Miranda rights and suspension consequences were outlined. The officer warned petitioner that his ambivalent answer that he was not consenting or refusing the test would be construed as refusal. Thus, petitioner here may well have established a prima facie defense.

The fact that petitioner spoke to an attorney is not in itself determinative. There are several reported

cases where the licensee may have been afforded the right to contact an attorney prior to the decision to refuse a test and the suspension was overturned. The case of *Commonwealth v. McFadden,* 522 Pa. 100, 559 A.2d 924 (1989) is such an example. In that case, after being given Miranda and suspension warnings, the licensee requested and was permitted to make a phone call prior to his refusal to take the proffered test. The evidence in *McFadden* failed to show to whom the licensee spoke or the nature of that exchange. The *O'Connell* requirements were held to apply.

In *Peppleman v. Commonwealth,* 44 Pa. Commw. 262, 403 A.2d 1041 (1979), it was held that consultation with an attorney will not cure a misleading or erroneous section 1547 (b)(2) suspension warning. Here, there is no assertion that the suspension warning itself was improper. The strict construction of section 1547(b)(2) explained in *Peppleman* is not relevant to *O'Connell* which is concerned with the surrounding circumstances as they affect the voluntariness of the decision of whether or not to consent.

In accord is *Halford v. PennDOT,* 136 Pa. Commw. 421, 583 A.2d 70 (1990). There, the defendant was not advised that Miranda warnings do not apply to a refusal to take a chemical test, but he agreed to take a intoxilyzer test after calling his attorney. Since the defendant failed to supply enough air to the machine, a refusal was recorded. The suspension for refusal was affirmed on appeal, on the basis that the refusal did not indicate any confusion as to the application of Miranda rights.

Unlike the facts presented in the many cases cited by counsel however, the petitioner was able to see his attorney and seek his advice. Only *after* petitioner's attorney consulted with petitioner and indicated to the officers that petitioner would not sign a

consent was the final determination made that petitioner's response was in fact a refusal. Petitioner's counsel signed as a witness to that effect as evidenced by Commonwealth exhibit no. 1 presented at the de novo hearing. It was not petitioner's request for counsel that was treated as a refusal. Rather, he was afforded greater rights then those to which he was otherwise entitled in that he was allowed to confer in person with counsel before making a final decision to refuse or consent to the blood test. Under these circumstances, petitioner's refusal was obviously not the result of confusion over his constitutional rights, and this court so finds.

Here there was no confusion, or if there was any it was certainly resolved when the attorney appeared at the hospital, conferred with petitioner, and in fact announced the petitioner's final decision not to consent to chemical testing. To follow the per se rule urged by petitioner is to ignore the realities of this case. It does not follow, based upon the facts of the case, and the *Fiester* and *Halford* decisions, that the officer's failure to give the *O'Connell* instructions is fatal.

The fact that petitioner's initial refusal may have been unknowing due to any confusion is irrelevant because his final refusal was not. Cf. *PennDOT v. Courson,* 136 Pa. Commw. 586, 584 A.2d 386 (1990). In that case, the licensee was not given the statutory suspension warning at the time he refused a blood test. He was not warned of the suspension until after they had left the hospital. Nevertheless, the court held that where licensee persists in refusing when there is a post-warning opportunity to assent, the refusal will stand. See also *Jackson v. Commonwealth,* 97 Pa. Commw. 602, 510 A.2d 396 (1986).

This court does not address the issue of whether or not petitioner was in fact independently aware of

552

his *O'Connell* rights by virtue of his longstanding employment as a state police officer. Petitioner testified at the de novo hearing that he was aware of some discussion on *O'Connell* matters as a result of a hearing and decision by the court in an unrelated matter occurring after the events in this case. Although it is of no consequence, it must be noted that the case to which petitioner makes reference was in fact decided by this court on May 9, 1991, several weeks before the instant events. The decision in *PennDOT, Bureau of Driver Licensing v. McGinnis,* (no. 118, Pa., Potter C.P. (1991)), was the only *O'Connell* related case ever heard by this court before the present one.

In accordance with the above discussion, the court enters the following order.

## ORDER

And now, October 21, 1991, the petitioner's appeal is denied, and the suspension of his driver's license ordered by the Bureau of Driver Licensing is reinstated.