606 A.2d 1264

COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant,

v.

Mark R. HOOVER, Appellee.

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 4, 1992.

Decided April 3, 1992.

Petition for Allowance of Appeal Denied Aug. 11, 1992.

Timothy P. Wile, Asst. Counsel-in-Charge of Appellate Section and Harold H. Cramer, Asst. Chief Counsel, for appellant.

No appearance for appellee.

Before CRAIG, President Judge, and DOYLE, COLINS, PALLADINO, McGINLEY, SMITH and KELLEY, JJ.

DOYLE, Judge.

This is an appeal by the Department of Transportation, Bureau of Driver Licensing (DOT), from an order of the Court of Common Pleas of Clarion County which sustained the appeal of Mark R. Hoover (Licensee) from imposition by DOT of a one-year suspension of his operating privileges for failure to submit to chemical testing pursuant to Section 1547 of the Vehicle Code, 75 Pa.C.S. § 1547.[1]

The trial court made the following pertinent findings. On November 26, 1988, Officer Kenneth Means was called to investigate a car parked in the middle of an intersection with the driver slumped over the wheel. Upon arriving, he noticed that the car had a flat tire. Licensee, who had been driving the car, had bloodshot eyes, slurred speech and an odor of alcohol on his breath. Officer Means administered

1. This case was first argued before the Court, en banc, on June 12, 1991. By an order filed January 29, 1992, this case was submitted on briefs to the present en banc panel on March 4, 1992.

field sobriety tests which Licensee failed. Thereafter, Licensee was arrested for driving under the influence and transported to the hospital for a blood test. On the way to the hospital Licensee repeatedly professed his fear of needles.

At the hospital Licensee was given an explanation of the implied consent law, but was not advised of his constitutional rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Licensee then asked to speak to his father before submitting to the test. He was told that he had no right to speak to anyone and was denied permission to do so. Licensee was then read his *Miranda* rights after which he continued to ask to speak to his father which request the officer continued to deny. Thereafter, Licensee continued to refuse to submit to testing and a refusal was recorded.

Licensee appealed his one-year suspension to the trial court which held, *inter alia*, that DOT's suspension must be set aside because the arresting officer had not complied with *Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 521 Pa. 242, 555 A.2d 873 (1989). DOT then appealed to this Court.

 On appeal we must consider the question of whether the police sufficiently complied with the Supreme Court's mandate in *O'Connell*. That case held that where an arrestee in response to a request to submit to chemical testing asks to speak to an attorney or someone else, the police, in addition to giving the licensee the implied consent warning must, "instruct the arrestee that such rights are inapplicable to the breathalyzer test, and that the arrestee does not have the right to consult with an attorney or anyone else prior to taking the test." *Id.*, 521 Pa. at 252, 555 A.2d at 878. While initially this Court had restricted application of the *O'Connell* rule to situations where a *Miranda* warning preceded such a request, in *Department of Transportation, Bureau of Driver Licensing v. Fiester*, 136 Pa.Commonwealth Ct. 342, 583 A.2d 31 (1990), *petition for allowance of appeal denied*, 528 Pa. 632, 598 A.2d 285

(1991), we reexamined our reading of *O'Connell* in light of additional Supreme Court decisions.[2] We determined in *Fiester* that the *O'Connell* requirement is triggered not only when *Miranda* warnings precede a request to submit to chemical testing, but also where no *Miranda* warnings are given but a licensee overtly manifests confusion over the applicability of *Miranda* rights to the chemical testing procedures.

Here Licensee's request to speak to his father preceded the *Miranda* warning. But, that request was an overt manifestation of confusion and, thus, no *Miranda* warning was required in order for the *O'Connell* duty to arise. The fact that a *Miranda* warning came later in no way alters the situation.

■ Since we hold that an *O'Connell* warning was required, we must now decide whether the warning given was sufficient under *O'Connell*. We hold that it was not. We opined in *Department of Transportation, Bureau of Driv-*

2. For example, in *PennDOT v. Mihalaki,* 123 Pa.Commonwealth Ct. 353, 553 A.2d 1042 (1989), this Court reinstated a twelve-month suspension of Mihalaki's license for his refusal to take a blood test because he was afraid of needles. He refused to take the test until he spoke with his attorney. Mihalaki was never advised of his rights under *Miranda* and did not testify that he was confused over his right to counsel. In fact, the police permitted him to call his attorney, but the attorney was not immediately available. When Mihalaki persisted in waiting for his attorney, the police recorded a refusal. The Supreme Court reversed our decision and, in a one-sentence per curiam order, cited *O'Connell* as the only authority for reversing. *Mihalaki v. Department of Transportation,* 525 Pa. 332, 580 A.2d 313 (1990)(per curiam).

Significantly, after our decision in *Fiester* was filed (November 28, 1990), the Supreme Court in yet another per curiam order reversed this Court in *Department of Transportation, Bureau of Driver Licensing v. Foley,* 528 Pa. 257, 597 A.2d 89 (1991). In *Foley* Judge Palladino wrote: "[o]n appeal to this court, DOT raises one issue: whether Licensee was required to produce expert medical evidence to prove that his injuries rendered him incapable of making a knowing and conscious refusal." *Miranda* warnings were not involved. A licensee's request to speak to his attorney was also not an issue. In reversing, the Supreme Court in its one paragraph order cites only *O'Connell* as authority. *See also Department of Transportation, Bureau of Driver Licensing v. Zubritsky,* 137 Pa.Commonwealth Ct. 647, 584 A.2d 1105 (1990), *rev'd,* 527 Pa. 287, 590 A.2d 754 (1991) (per curiam).

The dissent here does not discuss these Supreme Court decisions.

*er Licensing v. Sorg,* 147 Pa.Commonwealth Ct. 82, 606 A.2d 1270 (1992), filed contemporaneously herewith, that where no *Miranda* warnings are given, but where there *is* an overt manifestation of confusion over *Miranda* rights, the *O'Connell* explanation must include not only a statement that the right to contact an attorney or someone else applies only to criminal proceedings, but also an explanation that chemical testing is not such a *criminal* proceeding *but is a civil proceeding.* No such explanation was given to Licensee here.

Accordingly, having found compliance with *O'Connell* to be lacking, we affirm the trial court's order.[3]

### ORDER

NOW, April 3, 1992, the order of the Court of Common Pleas of Clarion County in the above-captioned matter is hereby affirmed.

KELLEY, J., concurs in the result only.

SMITH, J., dissents.

PALLADINO, J., dissents and files an opinion.

PALLADINO, Judge, dissenting.

I respectfully dissent. With the addition of the per se confusion rule to the amorphous concept of "knowing and conscious refusals," I believe the majority is attempting to create legislation by judicial fiat which is contrary to the clear language and intent of 75 Pa.C.S. § 1547 and contrary to the supreme court's decisions in *Department of Transportation, Bureau of Traffic Safety v. O'Connell,* 521 Pa. 242, 555 A.2d 873 (1989) and *Commonwealth v. McFadden,* 522 Pa. 100, 559 A.2d 924 (1989).

---

**3.** While the record may reflect that Licensee's refusal could have been due to his fear of needles rather than confusion over the applicability of *Miranda* rights, this is not what the trial court found. And, in fact Licensee withdrew this argument before his trial court hearing began. The only issues below were whether the officer had "probable cause" to arrest (an issue not involved in this appeal) and whether Licensee's refusal was knowing and conscious under *O'Connell.*

Critical to our inquiry regarding the duties of Commonwealth agents to licensed motor-vehicle operators (licensees) is recognition of the bedrock principle that the operation of motor vehicles on the highways of the Commonwealth is a privilege subject to such conditions as the legislature may see fit to impose, and is not a right protected by constitution. *Department of Transportation v. Wysocki*, 517 Pa. 175, 535 A.2d 77 (1987).

I begin by noting that among the conditions imposed upon the privilege to operate a motor vehicle in the Commonwealth is the implied consent to submit to chemical testing where there is reasonable cause to believe a licensee is driving while under the influence of alcohol, a controlled substance or both. Section 1547 of the Vehicle Code, 75 Pa.C.S. § 1547 controls and provides in pertinent part as follows:

(a) General rule.—Any person who drives, operates or is in actual physical control of the movement of a motor vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a motor vehicle:

(1) while under the influence of alcohol or a controlled substance or both; or

(2) which was involved in an accident in which the operator or passenger of any vehicle involved or a pedestrian required treatment at a medical facility or was killed.

(b) Suspension for refusal.—

(1) If any person placed under arrest for a violation of section 3731 (relating to driving under the influence of alcohol or controlled substance) is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police

officer, the department shall suspend the operating privilege of the person for a period of 12 months. (2) It shall be the duty of the police officer to inform the person that the person's operating privilege will be suspended upon refusal to submit to chemical testing. (3) Any person whose operating privilege is suspended under the provisions of this section shall have the same right of appeal as provided for in cases of suspensions for other reasons.

Section 1547 is a clear statement of the laudable legislative purpose to keep drunk drivers off the roads of the Commonwealth. The rule is rather simple. However, it is respectfully suggested that to pursue the analysis the court proposes would have the effect of transforming a simple rule by the legislature into a procedural morass and thereby provide escape routes for drivers who are highway menaces. An expansion of the "knowing and conscious refusal" standard could be perceived as an additional avenue through which drunk drivers can try to avoid basic societal responsibilities. In this light, a review of the law pertinent to section 1547 follows.

This court in prior decisions has interpreted section 1547 to require that where a licensee refuses to submit to a breathalyzer or blood test to determine blood alcohol levels, the Commonwealth to support a license suspension must first prove 1) that the licensee was placed under arrest for driving while under the influence of alcohol; 2) that the arresting officer had reasonable grounds to believe that the operator was driving under the influence of alcohol; 3) that the licensee was requested by the officer to submit to a breathalyzer test; 4) that the licensee refused to do so; and 5) that the licensee was warned by the officer that failure to submit to a test would result in a suspension of driving privileges. *Department of Transportation, Bureau of Driver Licensing v. Cavanaugh,* 115 Pa.Commonwealth Ct. 397, 540 A.2d 340 (1988).

After the Commonwealth has met these threshold requirements, the burden shifts to the licensee to prove that

his refusal to submit to chemical testing was not knowing and conscious. *Department of Transportation, Bureau of Traffic Safety v. Passarella,* 7 Pa. Commonwealth Ct. 584, 300 A.2d 844 (1973). Because the "knowing and conscious refusal" concept forms the foundation of the *O'Connell* and *McFadden* cases relied upon by the majority, a history of the "knowing and conscious" concept as applied by this court to license suspensions is a necessary backdrop.

The words "knowing and conscious refusal" are absent from section 1547. Section 1547 does not require that a refusal be "knowing and conscious." Because driving a motor vehicle is not a constitutionally protected right, the "knowing and conscious refusal" standard was not added by the judiciary to make section 1547 constitutional. The knowing and conscious refusal standard has its origin in *Department of Transportation, Bureau of Traffic Safety v. Passarella,* 7 Pa.Commonwealth Ct. 584, 300 A.2d 844 (1973).

In *Passarella,* a police officer with reasonable grounds to believe that the licensee had been driving while intoxicated requested the licensee to submit to a breathalyzer and a blood test. The licensee refused. Before the trial court, the licensee testified that he had no recollection of the refusal because he suffered a blow to the head. The trial court concluded that the licensee had suffered a cerebral concussion and found that there was no willful refusal to undergo the chemical tests. This court cited *Commonwealth v. Gallagher,* 3 Pa.Commonwealth Ct. 371, 283 A.2d 508 (1971) for the proposition that the implied consent laws were intended to supply proof of the presence of intoxicants and provided "a means of accounting for aberrant behavior otherwise than as symptomatic of the inevitable blow on the head." *Passarella,* 7 Pa.Commonwealth Ct. at 587, 300 A.2d at 846 (quoting *Gallagher,* 3 Pa.Commonwealth Ct. at 374, 283 A.2d at 509). Taking the above quoted language from *Gallagher,* this court implied that a blow on the head would excuse a refusal to submit to a chemical test. The court, however, held that the licensee's failure to produce

competent medical testimony as to the effects of his blow to the head negated the trial court's finding that the licensee suffered a concussion.

The *Passarella* court's reliance on *Gallagher* is merely misplaced dicta. *Gallagher*, in setting forth the reason for the legislative policy of requiring licensees to submit to chemical testing, stated as follows:

The automobile has bestowed great material, intellectual and social benefits. By the agency of the bad driver, it has also visited upon a substantial minority of persons disasters of Apocalyptic dimensions. At the forefront of the instruments of destruction has been the drunken driver. [The implied consent laws] were intended to supply scientific, physiological proof of the presence or absence of the influence of intoxicants, as a substitute for or supplement to the observations of eyewitnesses, uncertain when made and usually required to be recalled long after the event. Furthermore, the jury could thus be provided a means of accounting for aberrant behavior otherwise than as symptomatic of the inevitable blow on the head.

*Id.,* 3 Pa.Commonwealth Ct. at 347, 283 A.2d at 509.

*Gallagher* merely explained the evidentiary benefit of receiving a chemical test. The evidentiary value of the breathalyzer test results has nothing to do with the question of whether a licensee has made a "knowing and conscious refusal." Clearly, the court in *Passarella* contrived a new defense to refusing to take the chemical test. From this inauspicious beginning, the requirement of a "knowing and conscious refusal" was born.

Since *Passarella,* numerous types of unknowing and unconscious refusals have been developed. Notable are the following: licensee's obvious physical injuries make consent to a test impossible, *See Department of Transportation, Bureau of Traffic Safety v. Day,* 93 Pa.Commonwealth Ct. 49, 500 A.2d 214 (1985); non-English speaking licensees who have refused to take a chemical test have claimed their refusal was not "knowing and conscious" because they did

not understand or were confused by the implied consent warnings, *See Im v. Department of Transportation*, 108 Pa.Commonwealth Ct. 206, 529 A.2d 94 (1987); with competent medical evidence, a condition produced by medication may preclude a knowing and conscious refusal, *See Department of Transportation Bureau of Traffic Safety v. Cassidy*, 103 Pa.Commonwealth Ct. 582, 521 A.2d 59 (1987). All of these cases trace their concept of knowing and conscious refusal to *Passarella*. Finally, the supreme court recognized an unknowing refusal caused by confusion arising out of simultaneous recitations of *Miranda* rights and implied consent warnings where no explanation of the difference is supplied. *O'Connell* and *McFadden*. This type of defense is represented by the case currently before this court.

As stated above, the knowing and conscious refusal standard is not explicitly found in section 1547, the case law which promulgated the standard is not derived from a legitimate interpretation of the law, and the standard is not required by the U.S. or Pennsylvania Constitution. I do not seek here to overturn the knowing and conscious refusal requirement. However, because of its dubious heritage, the knowing and conscious standard must be strictly construed as it creates exceptions to the clear language and policy of the implied consent law.

In light of the foregoing, it is interesting to note that the supreme court in *O'Connell* clearly rests its requirement for a warning that *Miranda* rights do not apply to chemical testing upon a conclusion that certain licensees do not make knowing and conscious refusals.

In the case before us, the interpretation suggested misapplies the requirements of *O'Connell*. The majority concludes that, where the recitation of *Miranda* rights are followed by a request to take a chemical test and no explanation is given that the *Miranda* rights are inapplicable to the testing procedure, a *per se* violation of the *O'Connell* rule exists. We respectfully disagree with this interpretation.

*O'Connell* requires that two conditions be met before a warning that *Miranda* does not apply to the breathalyzer test be given. First, the licensee must have been given *Miranda* warnings. The supreme court states as follows:

We granted Appellant's petition for allowance of appeal to ... give guidance in the troublesome situation presented in cases such as this one, where a person is arrested for a crime, *read Miranda rights,* and is then told to submit to a breathalyzer test, but is not told that his right to see an attorney does not extend to taking this test.

*O'Connell* 521 Pa. at 251, 555 A.2d at 875 (emphasis added).

Second, the licensee must ask to speak to an attorney before the *O'Connell* warning is required. The supreme court held as follows:

Accordingly, *where an arrestee requests to speak to or call an attorney, or anyone else,* when requested to take a breathalyzer test, we insist that in addition to telling an arrestee that his license will be suspended for one year if he refuses to take a breathalyzer test, the police instruct the arrestee that such rights are inapplicable to the breathalyzer test and that the arrestee does not have the right to consult with an attorney or anyone else prior to taking the test.

*Id.,* 521 Pa. at 253, 555 A.2d at 878 (emphasis added).

The supreme court clearly requires that the licensee request to speak to an attorney or someone else before *O'Connell* warnings come into play. This request is the objective evidence of the licensee's state of confusion as to the applicability of *Miranda* warnings to the request to take a chemical test. The practical purpose of *O'Connell* is to eliminate confusion caused by the simultaneous recitation of *Miranda* and implied consent warnings. *O'Connell* does not explicitly state that a licensee no longer has the burden of proving that he did not make a knowing and conscious refusal. However, this is the result of the majority's decision. Such a conclusion is inconsistent with section 1547 and *O'Connell.*

The majority buttresses its conclusion that the simultaneous recitation of *Miranda* and implied consent warnings creates *per se* confusion by reliance on *Commonwealth v. McFadden*, 522 Pa. 100, 559 A.2d 924 (1989), upon which it based its decision in *Department of Transportation, Bureau of Driver Licensing v. Fiester*, 136 Pa.Commonwealth Ct. 342, 583 A.2d 31, *petition for allowance of appeal denied*, 528 Pa. 632, 598 A.2d 285 (1991). The court's reliance on *McFadden* in *Fiester* was misplaced. *McFadden* does not obviate the requirement that a licensee ask to speak to an attorney or someone else. The facts in *McFadden* are sketchy but it is clear that the licensee refused to take a chemical test and *requested to make a phone call*. After he made the call, the licensee continued to refuse to submit to a test. From the record, we do not know what McFadden was told during his telephone conversation nor do we know to whom he talked. As a result however, it can be inferred that he remained confused as to the applicability of his *Miranda* right to counsel to the breathalyzer test. Consequently, the supreme court reversed the licensee's suspension holding that the licensee did not make a knowing and conscious refusal because after the phone call McFadden did not demonstrate that he was no longer confused. Therefore, the *O'Connell* warning was necessary.

In the case at bar, Hoover was arrested and given the implied consent warning. He asked to speak with his father before submitting to the test. His *Miranda* rights were then read to him. He continued to ask to speak to his father and those requests were denied by the officer. Hoover continued to refuse to submit to testing and a refusal was recorded.

Hoover at no time demonstrated confusion as to the applicability of *Miranda*. There was no simultaneous reading of the *Miranda* warnings and the implied consent warnings. In fact, the *Miranda* warnings were not given to Hoover until after he asked to speak with his father before submitting to the test. Even after the *Miranda*

warnings were given, there is no showing that Hoover was confused about his right to speak to an attorney. Instead, Hoover continued to request that he be allowed to speak to his father and continued to refuse to submit to testing when that request was denied.

The critical requirements of *O'Connell* and *McFadden* were not met, and *O'Connell* warnings were not necessary. Hoover did not meet his burden of proving that his refusal to take a chemical test was not knowing and conscious; therefore, Hoover's driving privileges should have been suspended pursuant to Section 1547 of the Vehicle Code, 75 Pa.C.S. § 1547.