632 A.2d 611

Mark Anthony LAURITA, Appellant,

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING.

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 23, 1993.

Decided Sept. 29, 1993.

Simon B. John, for appellant.

Timothy P. Wile, Asst. Counsel In–Charge of Appellate Section, for appellee.

Before DOYLE and FRIEDMAN, JJ., and RODGERS, Senior Judge.

RODGERS, Senior Judge.

Mark Anthony Laurita (Laurita) appeals from an order of the Court of Common Pleas of Fayette County which dismissed Laurita's appeal from the suspension of his operating privileges by the Department of Transportation (the Department) pursuant to Section 1547 of the Vehicle Code (the Code), 75 Pa.C.S. § 1547.[1] We reverse.

Pennsylvania State Troopers Joseph Sibal, Sr. and Mark Russo observed Laurita operating a motorcycle without a helmet, failing to stop at a red traffic light, and parking in a handicapped parking slot. As the troopers approached Laurita, he walked toward them, stating "You got me, I'm drunk." (23a). The troopers noticed Laurita's swaying walk and smelled alcohol on his breath. After administering three field

1. Section 1547 of the Code provides for the suspension of a driver's license for a period of one year upon refusal to submit to chemical testing to determine blood-alcohol content.

sobriety tests, two of which Laurita failed, the troopers placed Laurita under arrest.

Laurita was advised of his *Miranda*[2] rights and given his implied consent warnings.[3] The troopers also explained to Laurita that the *Miranda* rights were his constitutional rights and that the implied consent warnings concerned a one year license suspension for failure to submit to chemical testing. Although the troopers stated that they explained the difference between *Miranda* and the implied consent warnings, the record does not indicate the content of the explanation. Laurita then agreed to accompany the troopers to a medical facility for a blood test. Upon arrival Laurita refused to submit to the test. The troopers again read Laurita his *Miranda* rights and the implied consent warnings; however, Laurita, indicating his understanding, continued to refuse to take the test.

By official notice the Department suspended Laurita's operating privileges for refusing to consent to a blood test. At the license suspension hearing before the trial court Laurita testified as follows:

Q. Well, he testified—Officer Sibal and Officer Russo both testified that you were advised of your constitutional rights, your Miranda rights, and the implied consent rights. Both of them said that that was told to you—Officer Sibal said he told it to you in the parking lot, and Officer Russo said that you were seated in the back seat of the patrol car when that was said. Do you recall those rights?

2. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

3. Trooper Sibal testified that he read the implied consent warning directly from the intoxication report, which states:

Any person who drives, operates or is in actual physical control of the movement of a motor vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcohol content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a motor vehicle.

(25a).

A. They said something to me, and he says, "How about going downtown with me for a blood test?" And I says, "Okay, I'll go."

Q. All right. Were they explained to you satisfactorily? Did you understand what was going on?

A. No, sir.

Q. And did you go downtown?

A. Yes. I was willing to take the blood test.

Q. All right. Did you tell the officers that you needed your driver's license?

A. Yeah. They asked me what I did, and I says I have my own business and I needed my driver's license. That's why I was taking the—going down with them and cooperating.

Q. Was it explained to you that if you failed to take the blood test that you would lose your driver's license? Did you understand that?

A. No. I even asked him.

Q. If you would have understood that, would you have taken the blood test?

A. Yes, sir. I was willing to.

Q. Were you confused by the officers giving you your constitutional rights and the implied consent right?

A. Yes. He made it sound like I was going to lose them no matter if I took it or I didn't take it, so I says, "I might as well save myself a stick in the arm."

Q. And is that why you didn't take it?

A. Yes. He told me I was going to fail no matter if I took it or didn't take it. He was taking my license.

(54a–55a).

Despite Laurita's testimony the trial court found that the troopers had advised Laurita of his rights and explained that *Miranda* rights did not apply to the implied consent law. The trial court concluded that the Department correctly suspended Laurita's license based on his refusal. This appeal followed.[4]

4. Where the trial court hears a matter *de novo* our scope of review is limited to a determination of whether the trial court based its findings

■ A motorist's operating privilege may be suspended as a result of a refusal to submit to a chemical test pursuant to Section 1547 of the Code if the Department establishes: (1) that the motorist was arrested by an officer who had reasonable grounds to believe that the motorist was driving while intoxicated; (2) that the motorist was requested to submit to a chemical test; (3) that he was informed that a refusal to submit to such testing would result in a suspension of his operating privileges; and (4) that he refused to submit to the test. *Kilrain.* Once the Department has proven that the motorist failed to submit to the chemical test, the burden then shifts to the motorist to prove by competent evidence that he was physically unable to take the test or was not capable of making a knowing and conscious refusal. *Department of Transportation, Bureau of Driver Licensing v. Norton,* 103 Pa.Commonwealth Ct. 78, 519 A.2d 1085 (1987).

The issue Laurita raises on appeal is whether the trial court erred in upholding his license suspension when he had not made a knowing and conscious refusal to submit to the blood test. Specifically, he alleges that he was confused because the troopers failed to explain the distinction between *Miranda* rights and the implied consent law. We note, however, that Laurita does not contend that he requested permission to speak with an attorney, but that he thought that he would lose his license whether or not he submitted to the test.

■ Laurita argues that even when an arrestee does not ask to speak with an attorney or does not exhibit confusion about the right to speak with an attorney, under *Commonwealth v. Danforth,* 530 Pa. 327, 608 A.2d 1044 (1992), the difference between *Miranda* and implied consent must be given. In *Danforth,* the court stated that:

on substantial evidence or committed an error of law. *Department of Transportation, Bureau of Driver Licensing v. Tomczak,* 132 Pa.Commonwealth Ct. 38, 571 A.2d 1104 (1990). Moreover, whether a motorist's conduct as found by the trial court constitutes a refusal is a question of law reviewable by this Court. *Department of Transportation, Bureau of Driver Licensing v. Kilrain,* 140 Pa.Commonwealth Ct. 484, 593 A.2d 932, *petition for allowance of appeal denied,* 529 Pa. 625, 600 A.2d 541 (1991).

The duty of the police to inform an arrestee that the right to counsel is inapplicable to requests for chemical testing is simply *not* contingent upon the arrestee exhibiting confusion concerning his right to speak with an attorney, or actually requesting to speak with an attorney.... [Furthermore, the court held] that when *Miranda* warnings are followed by a police request for chemical testing, the police have an affirmative duty to not only inform the arrestee that refusal to submit to chemical testing will result in suspension of his driving privileges, but also that the arrestee does not have a right to speak with an attorney or anyone else in connection with his decision as to whether he will submit to chemical testing.

*Id.* at 332–333, 608 A.2d at 1046.

Underlying Laurita's contention that his refusal is invalid is his argument that the troopers failed to give an *O'Connell*[5] warning. We have held that "where *Miranda* rights are followed by a request to take a chemical test and no explanation is given that the *Miranda* rights are inapplicable to the testing procedure, a *per se* violation of the *O'Connell* rule exists." *Department of Transportation, Bureau of Driver Licensing v. Fiester,* 136 Pa.Commonwealth Ct. 342, 347, 583 A.2d 31, 33–34 (1990), *petition for allowance of appeal denied,* 528 Pa. 632, 598 A.2d 285 (1991).

The record does not contain any indication that Laurita was told that he did not have a right to speak with an attorney prior to submitting to the chemical test. The troopers' testimony indicates an explanation was provided to Laurita that *Miranda* rights are constitutional rights and implied consent warnings concern a one-year suspension. Just statements by the troopers that the difference was explained is not enough. *Danforth* mandates an *O'Connell* warning.

We recognize that Laurita's confusion concerned the implied consent warning, evidenced by his testimony that he thought he would lose his license whether or not he submitted to the

5. *Department of Transportation, Bureau of Traffic Safety v. O'Connell,* 521 Pa. 242, 555 A.2d 873 (1989).

blood test. *Danforth*, however, established that confusion is not a prerequisite to a successful defense when *Miranda* warnings precede a request for chemical testing. *See Mottershead v. Department of Transportation, Bureau of Driver Licensing*, 150 Pa.Commonwealth Ct. 500, 616 A.2d 63 (1992) (Doyle, J., dissenting). Moreover, the language in *Danforth* requires that police give an explanation that a motorist has no right to speak to an attorney prior to deciding whether to submit to the chemical test. Therefore, we hold that under the facts of this case the motorist's refusal to submit to the blood test was not a knowing and conscious refusal.

Accordingly, we reverse the trial court's order upholding Laurita's suspension.

## *ORDER*

NOW, September 29, 1993, the order of the Court of Common Pleas of Fayette County in the above-captioned matter is hereby reversed.