**Ronald C. SCOTT, Jr.**

v.

**COMMONWEALTH of Pennsylvania, Department Of Transportation, Bureau Of Driver Licensing, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Nov. 2, 1994.
Decided Feb. 14, 1995.

Harold H. Cramer, Asst. Chief Counsel, Vehicle & Traffic Law Div., for appellant.

Eugene A. Bonner, for appellee.

Before COLINS, President Judge, and DOYLE, McGINLEY, SMITH, PELLEGRINI, FRIEDMAN and KELLEY, JJ.

FRIEDMAN, Judge.

Department of Transportation, Bureau of Driver Licensing (DOT) appeals from an order of the Court of Common Pleas of Delaware County sustaining Ronald C. Scott, Jr.'s (Licensee) appeal and rescinding the suspension of Licensee's operating privilege imposed by DOT pursuant to 75 Pa.C.S. § 1547(b)(1) (refusal to submit to chemical testing). We affirm.

On October 9, 1992, Officer Jerome J. Cartmell of the Tredyffrin Township Police Department observed an automobile, driven by Licensee, proceeding at a speed in excess of the posted speed limit. After stopping the vehicle, the officer noticed that Licensee's speech was slurred; his eyes were glassy; he smelled of alcohol; and he swayed when he walked. Officer Cartmell asked Licensee to submit to field sobriety tests; however, Licensee could not perform those tests satisfactorily. Officer Cartmell then placed Licensee under arrest for driving under the influence of alcohol in violation of 75 Pa.C.S. § 3731.

The officer transported Licensee to Paoli Memorial Hospital for blood testing. At the hospital, Officer Cartmell advised Licensee of the Implied Consent Law[1] and read to Licensee standard warnings, which included the following:

(b) **Suspension for refusal.—**
(1) If any person placed under arrest for a violation of section 3731 (relating to driving under influence of alcohol or controlled substance) is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person for a period of 12 months.
(2) It shall be the duty of the police officer to inform the person that the person's operating privilege will be suspended upon refusal to submit to chemical testing.

---

1. The "Implied Consent Law," which is found at 75 Pa.C.S. § 1547(a) and (b), provides in relevant part:

(a) **General Rule.**—Any person who drives, operates or is in actual physical control of the movement of a motor vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a motor vehicle:
(1) while under the influence of alcohol. . . .

**200**

As a police officer, it is my duty to explain to you that the constitutional rights due you in a criminal prosecution as set forth in the Miranda decision do not apply to chemical testing under the implied consent law. Specifically, you do not have a right to consult with a lawyer or anyone else prior to taking the chemical test nor do you have the right to remain silent when a police officer asks you to submit to a chemical test. Your continued request to speak to a lawyer or anyone else after this explanation is given, or your silence when asked to submit to a chemical test, will be considered as a refusal of the chemical test subjecting you to the suspension of your driving privilege.

(R.R. at 128a.)

Nevertheless, Licensee refused to take the blood test and requested to speak to his attorney. Officer Cartmell informed Licensee that because this was a drunk driving case he was not entitled to consult with an attorney at that time. Licensee, however, continued to believe that he was not obligated to submit to a blood test until after he consulted with an attorney. Officer Cartmell then transported Licensee to the Tredyffrin Township Police Station where he again read to Licensee the Implied Consent Law warnings. Licensee again refused to submit to the blood test without first consulting with his attorney. Officer Cartmell and another police officer, Marc A. Reider, both explained to Licensee why he was not entitled to speak to an attorney before taking the blood test, but Licensee continued to demand to see his attorney before ceding to their request.

As a result of Licensee's failure to submit to the blood test, DOT suspended Licensee's driving privilege for one year. Licensee appealed to the trial court arguing, *inter alia*, that because he believed that he was entitled to consult with an attorney, he did not knowingly or consciously refuse to take the blood test.

The trial court held:

Although [Licensee] testified at one point that he did not recall that [the Implied Consent Law warning] was read to him and later testified that it wasn't, we find that it was read to him. Was that a sufficient explanation to [Licensee] that he was not entitled to speak to an attorney before submitting to or refusing to take a blood test. [Sic.] In most cases, it would be a sufficient explanation and [DOT] would have met its burden. The credible testimony of [Licensee] that he repeatedly asked if he was in a civil or criminal situation, that he asked to speak to an attorney, and *the absolutely incorrect statements made to him to the effect that it being a drunk driving case he is not entitled to a lawyer,* tilts the scales of justice in favor of [Licensee] and therefore [DOT] did not meet its burden.

(Trial court op. at 8–9.) (Emphasis added.) Accordingly, the trial court rescinded the suspension.

 The issue before us[2] is whether Officer Cartmell's statement that "because this is a drunk driving case, you are not entitled to a lawyer at this time" created justifiable confusion as to Licensee's right to consult with an attorney.[3]

In *Department of Transportation, Bureau of Driver Licensing v. Ingram,* 538 Pa. 236,

---

**2.** In reviewing a driver's license suspension case, our scope of review is limited to determining whether the findings of fact of the trial court are supported by competent evidence and whether the trial court committed an error of law or an abuse of discretion in reaching its decision. *Department of Transportation, Bureau of Driver Licensing v. Jennings,* 156 Pa.Commonwealth Ct. 219, 627 A.2d 211 (1993).

**3.** To sustain a license suspension under 75 Pa. C.S. § 1547(b), DOT must establish that the licensee:
(1) was arrested for driving while under the influence of alcohol,

(2) was requested to submit to a chemical test,
(3) refused to submit to such a test, and
(4) was specifically warned that a refusal would result in the revocation of his driver's license.
*Jennings.* After DOT has established that the licensee refused to submit to the chemical test, the burden shifts to the licensee to prove by competent evidence that he did not make a knowing refusal. *Id.*

Here, neither party disputes that DOT proved the four elements required to sustain Licensee's suspension. Thus, we focus upon whether Licensee made a knowing refusal.

648 A.2d 285 (1994), our Supreme Court held that when a licensee requests to speak to an attorney following a reading of the Implied Consent Law, the attending police officer must inform the licensee that his *Miranda* rights do not apply to chemical testing. As such, the standard warnings read by Officer Cartmell here would ordinarily be adequate to meet this requirement. *See Leckenby v. Department of Transportation, Bureau of Driver Licensing,* 160 Pa.Commonwealth Ct. 26, 634 A.2d 670, *appeal denied,* 536 Pa. 632, 637 A.2d 292 (1993). However, the trial court found credible Licensee's testimony that he remained confused. Moreover, Officer Cartmell misstated the law by saying that Licensee was not entitled to an attorney because it was a *drunk driving* case. Thus, the trial court found that Officer Cartmell's misstatement, which accompanied the "adequate" explanation required under *Ingram,* increased rather than cured Licensee's confusion over his rights. The record supports the trial court's determination, indicating that Licensee exhibited overt confusion regarding his right to an attorney, as evidenced by several statements he made at the hearing, and that his confusion over that right was increased by Officer Cartmell's statements:

> Q. Okay, just tell us what happened after you were placed in custody with regard to the officers requesting a blood alcohol—testing to determine your blood alcohol, tell His Honor, Judge Wright.
>
> A. ....[A]t that point I said, well, may I have a lawyer or am I entitled—I said, may I have a lawyer. And he said because this is a drunk driving case, you're not entitled to a lawyer at this time. *That went against everything that I know to be true.* And at that point he kept asking me to submit to a blood test, and *I knew I was in the right. And I knew that I didn't have to submit to a blood test.*

(R.R. at 46a.) (Emphasis added.)

> Q. So what did—in the tape it's heard that you were saying, am I in a criminal situation?

> A. I didn't know if I was in a criminal situation or not. I still didn't, after the tape.

(R.R. at 61a.)

> Q. Was anything explained to you about the situation you were in? You questioned them. Was anything ever explained to you about that?

> A. That I wasn't entitled to an attorney because I was arrested for drunk driving.

(R.R. at 63a.)

> Q. So you were aware at the hospital that if you did not take the test this is what was going to happen to you, is that correct?

> A. I was aware that they were telling me that. *I did not believe that. I didn't think that that could really happen.*

> Q. Do you believe it today?

> A. Well yes, I do, sir. I had no—it wasn't explained to me. All—I was simply told that that's what would happen, no reason why, and that's why I did not believe that it would be true.

(R.R. at 76a–77a.) (Emphasis added).

Because this testimony evidenced Licensee's continued confusion about his right to counsel, even following the standard warnings, due to Officer Cartmell's "explanation," we agree with the trial court that Licensee did not make a knowing refusal. *See Department of Transportation, Bureau of Driver Licensing v. Jennings,* 156 Pa.Commonwealth Ct. 219, 627 A.2d 211 (1993). Accordingly, we affirm the trial court's decision.

### ORDER

AND NOW, this 14th day of February, 1995, the order of the Court of Common Pleas of Delaware County, dated September 15, 1993, No. 92–19645, is affirmed.

DOYLE, Judge, concurring.

Simply stated, I join in the result reached by the majority because *Department of Transportation, Bureau of Driver Licensing v. Ingram,* 538 Pa. 236, 648 A.2d 285 (1994), controls the outcome of this appeal.

I write separately, however, to observe that in *Ingram* the Supreme Court affirmed this Court (and the judgment of the trial court) which had sustained the appeals of both DUI drivers[1] and *reversed* the suspension imposed by the Department of Transportation. In *Ingram,* the Department had appealed to the Supreme Court solely on the issue of the legal adequacy of the warnings to motorists which this Court had articulated in *Department of Transportation, Bureau of Driver Licensing v. Sorg,* 147 Pa.Commonwealth Ct. 82, 606 A.2d 1270, *petition for allowance of appeal denied,* 531 Pa. 657, 613 A.2d 561 (1992), and *Department of Transportation, Bureau of Driver Licensing v. Hoover,* 147 Pa.Commonwealth Ct. 70, 606 A.2d 1264, *petition for allowance of appeal denied,* 531 Pa. 656, 613 A.2d 561 (1992). As Justice Montemuro stated: "PennDOT has appealed in both *Frain* and *Ingram* seeking guidance from this Court as to what information police must impart to the motorist in order to discharge its duty under our decision in *O'Connell." Ingram,* 538 Pa. at ——, 648 A.2d at 292. The Supreme Court supplied that guidance and now there is no question that the *Sorg* and *Hoover* warnings "satisfy, as a matter of law, the minimum requirements we have articulated today." *Id.* at ——, 648 A.2d at 295.

What is *also* now clear from *Ingram* is that the Supreme Court has further held that the decision of whether a DUI driver is confused or not is to be made by the trial judge, as a finding of *fact,* and that it is a **subjective** test of the DUI driver's confusion, not an objective test of the warning given by the police.

What we glean from the *Ingram* opinion is that Ingram testified that he never fully understood his rights which were read to him in the back of the police car, with activity taking place around him, and he further claimed that the warnings which were given to him at the police station were also very confusing. The trial court found his testimony credible and held that Ingram was confused because he was not given a chance to **read** the written warnings, "nor was he able to understand what was going on at the time the form was read [to him] because of the distractions." *Id.* at ——, 648 A.2d at 291. On *those* grounds, which are markedly different from the reasoning of this Court in reversing the suspensions, the Supreme Court affirmed our decision.

Furthermore, Ingram, incidentally was not given *Miranda*[2] warnings, nor was there ever any mention ever made to him about "Miranda rights" or his "constitutional rights" under *Miranda.* And, Justice Montemuro clearly stated that for a proper *O'Connell* warning, "the motorist must be informed that his Miranda rights do not apply to chemical testing." *Id.* at ——, 648 A.2d at 295.

The final result regarding Theodore Frain, the second DUI driver in the *Ingram* decision, is likewise instructive. Frain, unlike Ingram, **had** been given *Miranda* warnings, and had also been given a proper *O'Connell* warning by the police officer when the officer read from a DL–26 form, which Justice Montemuro stated satisfies, as a matter of law, the minimum requirements under *O'Connell.* But, the trial court found nevertheless that the police officer's testimony was not credible and found further that in response to Frain's request to speak with an attorney, the police officer replied: "he [the licensee] didn't have that option" without further explanation. The trial court entered an order reinstating Frain's driver's license, and held that the warning furnished to Frain was **insufficient** to discharge the officer's duty under *O'Connell.* However, despite the reasoning of the trial court, the Supreme Court held that:

> Having reviewed the record in *Frain,* we are satisfied with the trial court's finding that Frain did not know anything more than that he did not have the option of speaking with an attorney. Because the testimony elicited at trial supports that finding by the trial court, and questions of credibility and conflicts in the evidence presented are for the trial court to resolve, we are precluded from overturning the trial court's determination and must af-

---

1. John Ingram and Theodore H. Frain IV.

2. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

firm. Furthermore, the warnings provided on DL–26 satisfy, as a matter of law, the minimum requirements we have articulated today.

*Id.* at ——, 648 A.2d at 295.

For further guidance on the rationale used by the Supreme Court, we can compare also the recent per curiam decision reversing this Court in *Department of Transportation v. Gomo*, 538 Pa. 475, 649 A.2d 431 (1994), with the prior opinion of the Supreme Court in *Department of Transportation v. McCann*, 533 Pa. 456, 626 A.2d 92 (1993).

In *McCann*, the Supreme Court held:

When appellant refused to take the breathalyzer test, he stated that he would not participate in the test unless he was first given an opportunity to speak with his attorney. Police responded by informing appellant that he would not be permitted to speak with an attorney before taking the test. They did not, however, explain that the constitutional right to counsel is not applicable to breathalyzer tests. At issue is whether the police response to appellant's request for legal consultation was adequate under the standard set forth in *Commonwealth, Department of Transportation v. O'Connell*, 521 Pa. 242, 555 A.2d 873 (1989). *We hold that it was not.*

533 Pa. at 458, 626 A.2d at 93 (emphasis added).

Yet, in the *Gomo* opinion of this Court,[3] we held:

In this case, no further information was given to Licensee when he requested to speak to his attorney other than the response that he was not entitled to an attorney. That response is insufficient under *O'Connell* and *Sorg* and, therefore, the Licensee's refusal was not a knowing and conscious one.

*Id.* at 147–148, 629 A.2d at 220. The Supreme Court reversed this Court, by a per curiam order, filed on October 26, 1994, citing as authority only its decision in *Ingram*.

This reasoning answers then the dissent of Judge Pellegrini which states that the "ma-

jority adopts the trial court's rationale because it believes that the officer's statement increased rather than cured the Licensee's confusion over his rights, even though he had been provided the required explanation under *Sorg*." It simply wasn't *this* Court that believed it; it was the *trial court* which believed it and, as Justice Montemuro pointed out in footnote 9 of *Ingram*, DOT didn't even preserve that issue in its appeal to the Supreme Court. How much clearer could the Supreme Court have been in pointing out that it is the *trial court's* determination on the subjective state of the intoxicated driver's confusion than when Justice Montemuro wrote, "[b]ecause the testimony elicited at trial supports that finding by the trial court ... we are precluded from overturning the trial court's determination and must affirm." *Ingram*, 538 Pa. at ——, 648 A.2d at 295.

Regarding the extent of the warning itself, and its *legal* sufficiency, the Justice wrote:

It is incomprehensible how evoking these arcane differences will assist the apparently intoxicated motorist to make a knowing and conscious decision about whether or not to submit to chemical testing. *Informing the motorist that his right to counsel does not apply to chemical testing resolves for the motorist any confusion he may have about his right to counsel.*

*Id.* at ——, 648 A.2d at 294 (emphasis added). All that is necessary is that the motorist "be informed that his driving privileges will be suspended for one year if he refuses chemical testing" and that "his *Miranda* rights do not apply to chemical testing." *Id.* The determination of whether, after that warning is given, the motorist is confused or not is left to the trial court.

McGINLEY, J., joins in this concurring opinion.

PELLEGRINI, Judge, dissenting.

I respectfully dissent. The Licensee received the requisite warnings that he was not entitled to an attorney prior to submitting to a blood test to determine his blood-alcohol

---

3. *Department of Transportation, Bureau of Driver Licensing v. Gomo,* 157 Pa.Commonwealth Ct. 142, 629 A.2d 217 (1993).

level, and the explanation given by the arresting police officer to him after those warnings were made as to why he was not entitled to an attorney did not negate the Licensee's understanding of those warnings or create confusion.

This court has determined that when a licensee is not given *Miranda* warnings but is arrested and asked to submit to a chemical test for blood-alcohol content, in addition to being read the Implied Consent Law, he must be told that he is not entitled to speak with an attorney prior to submission of the test and must be given an explanation as to why that is so.

In *Department of Transportation, Bureau of Driver Licensing v. Sorg,* 147 Pa.Commonwealth Ct. 82, 606 A.2d 1270, *petition for allowance of appeal denied,* 531 Pa. 657, 613 A.2d 561 (1992), guidelines were established regarding the statements that were to be made by the police to a licensee who exhibited confusion as to his right to an attorney prior to submitting to chemical testing where no *Miranda* warnings were given. *Sorg* held that the police should tell a licensee who exhibited confusion over his constitutional rights the following:

1. That the right to counsel is a constitutional right and applies only to criminal proceedings, not to civil proceedings.

2. That the request to submit to chemical testing is not a criminal proceeding, that it is a civil proceeding, but the licensee's refusal to submit to the testing may be introduced in evidence in a subsequent criminal proceeding.

3. That the licensee does not have a right to contact any attorney or anyone else before taking the test nor does he have the right to remain silent as to the testing procedures; that is, the licensee must affirmatively agree to submit to the chemical testing.

After *Sorg,* we further held that if this essential subject matter was covered, it was not necessary to use the precise words "civil proceeding" in order to make the arrestee aware that his constitutional criminal rights did not extend to a chemical blood test. *Department of Transportation, Bureau of Driver Licensing v. Elko,* 155 Pa.Commonwealth Ct. 24, 624 A.2d 717, *petition for allowance of appeal denied,* 535 Pa. 670, 634 A.2d 1118 (1993). This was evidenced in *Leckenby v. Department of Transportation, Bureau of Driver Licensing,* 160 Pa.Commonwealth Ct. 26, 634 A.2d 670 (1993), *petition for allowance of appeal denied,* 536 Pa. 632, 637 A.2d 292 (1994), when a police officer relied on the Department's DL–26 form to comply with *Sorg.* The DL–26 form provides the following relevant language:

As a police officer, it is my duty to explain to you that the constitutional rights due you in a criminal prosecution as set forth in the Miranda decision do not apply to chemical testing under the implied consent law. Specifically, you do not have a right to consult with a lawyer or anyone else prior to taking the chemical test nor do you have the right to remain silent when a police officer asks you to submit to a chemical test. Your continued request to speak to a lawyer or anyone else after this explanation is given, or your silence when asked to submit to a chemical test, will be considered as a refusal of the chemical test subjecting you to the suspension of your driving privilege.

In *Leckenby,* we held that the language in that form met the *Sorg* and *Elko* tests because it communicated *by implication* that the chemical test was civil rather than criminal in nature.

In this case, Police Officers Cartmell and Reider both repeatedly read to the Licensee the Implied Consent Law and the pertinent language from the DL–26 form after arresting him and transporting him to a hospital for blood-alcohol testing. The Licensee also testified that he understood the warnings and what would happen if he did not take the test, but refused to take the test because he did not believe the police officers. (Notes of Testimony at 76a.) Nonetheless, the trial court found that because the Licensee kept asking whether he was in a civil or criminal situation, whether he could speak to his attorney, and one of the police officers finally explained to him that he was not entitled to do so "because this was a drunk driving case," the Licensee was confused sufficiently

about his right to speak to an attorney to warrant the return of his driving privileges.

The majority adopts the trial court's rationale because it believes that the police officer's statement increased rather than cured the Licensee's confusion over his rights, even though he had been provided the required explanation under *Sorg*. However, in light of the warnings which the Licensee had already received and the admission by the Licensee that he understood the warnings but did not believe them, the statement made by the police officer coupled with those warnings in no way changed the fact that he had received sufficient warnings indicating that he was not entitled to speak to an attorney because he was involved in a civil proceeding. Here, the police officer was merely attempting to tell the Licensee in short what he had already told him several times when reading the warnings—that he had no right to speak to an attorney prior to submitting to the blood test. Accordingly, I dissent.

COLINS, President Judge, and SMITH, Judge, join in this dissent.